In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-2710

DOMINIC MOAB,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

———————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A97-333-672

———————

ARGUED FEBRUARY 16, 2007—DECIDED SEPTEMBER 13, 2007

———————

Before FLAUM, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge.*  In August 2005, Dominic Moab, a twenty-seven year-old Liberian man, applied for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). An immigration judge ("IJ") held an individual hearing on October 27, 2005. In his decision, rendered on January 18, 2006, the IJ denied all relief. Mr. Moab timely appealed to the Board of Immigration Appeals ("BIA" or "Board"). On June 1, 2006, the Board dismissed his appeal. For the reasons set forth in this opinion, we grant the petition for review, reverse the decision of the Board and remand the case for further proceedings.

# I

## BACKGROUND

### A.

Mr. Moab is a native and citizen of Liberia. On June 21, 2005, he arrived at O'Hare International Airport in Chicago, Illinois and sought admission to the United States. At the time of his arrival, he did not possess valid documents, but requested the opportunity to present an application for political asylum on Form I-589; such a request is also considered a concurrent application for withholding of removal under the Immigration and Nationality Act. While at the airport, and later in a credible fear interview, Mr. Moab stated that he had left Liberia because of the civil war in that country and because he feared that, had he remained, he would have been killed as the result of a familial land dispute. On his subsequent application for asylum, Mr. Moab added that he feared returning because he was homosexual and had suffered beatings in Liberia because of his sexual orientation.

In discussing his fear of returning to Liberia, Mr. Moab described a land dispute with a man named Ubuoma, a member of Mr. Moab's extended family. Mr. Moab's immediate family and Ubuoma both claimed ownership of a particular tract of land outside the village. Mr. Moab found his father shot and killed on that land. Subsequently, Ubuoma threatened to kill Mr. Moab if he ever returned and challenged Ubuoma's ownership of the farm.

Mr. Moab also described three specific beatings that he allegedly had suffered because of his homosexuality. The first occurred while he was playing football in his native Liberia. Between ten and twelve young men beat him and called him a "devil," a term, according to Mr. Moab,

employed in Liberia to describe homosexuals. The second incident was similar and occurred while Mr. Moab was selling melons at the market. He became embroiled in an argument and was beaten by eight other men. The third incident occurred while he was sitting under a mango tree with his boyfriend, a man named Gabriel. Some men from his local village saw Mr. Moab sitting with Gabriel under the tree. One of the men proceeded to say: "Let's go do something with Dominic so he cannot have something like sex with the boy." A.R. 47. Soon after, a group of boys from the village, twelve in number, proceeded to beat Mr. Moab with sticks.

Mr. Moab claims that, because of these occurrences, he left Liberia for Sierra Leone, then went to Libya and finally to Italy. Then, using a false passport and traveling through Spain, he attempted to enter the United States. He did not seek asylum in the other countries that he visited between his departure from Liberia and his arrival in the United States.

At his hearing before the IJ, Mr. Moab was asked why he had failed to mention his homosexuality to the immigration officers at the airport or to the examining official during his credible fear interview. Mr. Moab responded, "[n]o, because of this homosexual, everywhere I go, people discover that I'm homosexual. It's different, so sometimes I want to keep it, but I can't keep it." A.R. 217. When asked if he was lying, he stated, "[b]ecause I tell the truth about my problem. That's why I am running, but my—the homosexual, I didn't tell her about that because . . . everywhere . . . that's why I want to see my lawyer before . . . ." A.R. 219.

**B.**

In denying relief, the IJ determined that Mr. Moab had not presented a credible claim in support of his application and, consequently, had failed to meet his burden of proof. The IJ articulated five bases for this adverse credibility finding: (1) an inconsistency between Mr. Moab's initial interviews, in which he based his application on a fear of returning to Liberia because of the civil war and a fear that his neighbor would kill him over a land dispute, and his later contention that his application was based on a fear of persecution; (2) a discrepancy between his asylum application that simply contained a general description of persecution based on homosexuality and his detailed hearing testimony in which he gave an account of three specific beatings based on his sexual orientation; (3) an inconsistency based on his failure to seek, over eight years, asylum in Sierra Leone, Libya, Italy or Spain; (4) a contradiction between Mr. Moab's statement that he did not disclose his homosexuality because he did not speak English and his later testimony, in English, at the hearing; and (5) a similar inconsistency between his early claim that he did not disclose his sexual orientation because he did not speak English and his later asylum application in which he indicated that he was fluent in English.

After remarking on Mr. Moab's lack of credibility, the IJ went on to state that, in any event, the beatings that Mr. Moab allegedly had experienced in his hometown because he was homosexual did not rise to the level of past persecution. The IJ also determined that Mr. Moab had failed to demonstrate a well-founded fear of future persecution. Therefore, the IJ determined that Mr. Moab had failed to meet his burden of proof even if his testimony were credible.

Mr. Moab then appealed the IJ's decision to the BIA. The Board dismissed the appeal in a brief opinion. The BIA discussed the IJ's findings in a single paragraph:

> Based on the provisions of the REAL ID Act, the Immigration Judge properly considered the questionable additions the respondent made to his asylum application and his inconsistent account of why he was applying for asylum before the asylum officer. *We agree with the Immigration Judge that it appears that as the respondent's claim progressed, his alleged account of harm became markedly more egregious.* Consequently, we cannot find that the Immigration Judge's adverse credibility finding is clearly erroneous. Inasmuch as the respondent has failed to present a credible claim, we will find that he failed to meet his burden of proof for asylum.

A.R. 2 (emphasis supplied).

The BIA then went on to state that because Mr. Moab had failed to meet his burden with respect to his application for asylum, he likewise had failed to meet the higher standard required to establish eligibility for withholding of removal. The BIA also stated that Mr. Moab did not establish credibly that, more likely than not, he would be tortured and thus was not eligible for protection under the CAT. Finally, the BIA determined that the IJ's use of a video conference to conduct the proceedings did not deny Mr. Moab a fair hearing. The Immigration and Nationality Act and the applicable regulations specifically authorize conducting these hearings through a video conference; therefore, the Board concluded, the use of video equipment was not improper.

**II**

**DISCUSSION**

We begin our analysis by addressing a threshold matter that frames the task ahead of us. We must determine whether, in the context of this case, the decision of the BIA is free-standing, or must be considered as simply supplemental to that of the IJ.[1] When the BIA issues its own opinion rather than adopting or merely supplementing the opinion of the IJ, this court's task is to review only the opinion of the BIA. *Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004). Typically, when the BIA issues a decision, that decision becomes the basis for review. *Zheng v. Gonzales*, 409 F.3d 804, 809 (7th Cir. 2005). We also have stated that "absent the BIA adopting the findings of the IJ . . . we review the determinations, including the credibility determinations, of the BIA, not the IJ." *Begzatowski v. INS*, 278 F.3d 665, 669 n.5 (7th Cir. 2002). On the other hand, where the BIA's decision merely supplements the opinion of the IJ, "the IJ's opinion, as supplemented by the BIA's opinion, becomes the basis for review." *Liu*, 380 F.3d at 311.

We think it is clear in this case that the opinion of the Board is free-standing and, therefore, must be the exclusive focus of our review. The Board clearly engaged in an independent analysis of the case. The BIA did not adopt, expressly or by implication, the IJ's findings. It

---

[1] When the BIA adopts expressly the reasoning of the IJ, we review the IJ's analysis. *See, e.g.*, *Pop v. INS*, 270 F.3d 527, 529 (7th Cir. 2001). The BIA's opinion in this case contains no language of express adoption, and, therefore, this reasoning does not apply.

simply stated that it agreed with the IJ's determination that, as his case progressed, Mr. Moab's claim of harm became more egregious. Nor did the Board supplement the IJ's opinion. Rather, it approved of what it believed the IJ's reasoning to have been and, on that basis, dismissed the petition.

We are reminded that we may uphold the BIA's determination to deny Mr. Moab's petition for asylum, withholding of removal and CAT relief, "if at all, on the same basis articulated in the order by the agency itself . . . ." *Slusher v. NLRB*, 432 F.3d 715, 729 (7th Cir. 2005) (citing *SEC v. Chenery*, 318 U.S. 80, 87-88 (1943) ("*Chenery I*")). The Supreme Court of the United States has admonished, in *Chenery I*, that we may not sanction an agency decision based upon the post-hoc rationalizations of appellate counsel for the agency's decision. *Chenery*, 318 U.S. at 87-88; *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) ("*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself."). When *Chenery I* was again before the Supreme Court in *SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ("*Chenery II*"), the Court stated succinctly the fundamental rule of administrative law discussed in *Chenery I*:

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Id.* at 196 (*Chenery II*). Therefore, if the BIA based its conclusion upon an improper basis, we are powerless to affirm that judgment.

The IJ premised his adverse credibility finding upon five different aspects of Mr. Moab's testimony, discussed above. The bases for the IJ's adverse credibility findings resulted essentially from Mr. Moab's failure to mention his homosexuality when he appeared pro se at his airport and credible fear interviews, his submission of an application for asylum that was not as detailed as his oral testimony nor as the affidavit he had submitted in support of his application and the fact that the IJ found, generally, that Mr. Moab's testimony lacked sufficient detail. The BIA simply stated that it "agree[d] with the Immigration Judge that it appears that as [Mr. Moab]'s claim progressed, his alleged account of harm became markedly more egregious." A.R. 3. The BIA also stated that it agreed with the IJ that Mr. Moab had failed credibly to establish that he would more likely than not be tortured if removed to Liberia.

We review the denial of a petition for asylum, withholding of removal and CAT protection for substantial evidence. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004). We must therefore uphold a BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal citations and quotation marks omitted). We shall overturn the BIA's determination only where the evidence "compels" a contrary conclusion and not merely because we might have decided the case differently. *Capric*, 355 F.3d at 1086.

The BIA premised its determination to dismiss Mr. Moab's appeal on the fact that, in its view, Mr. Moab's

account of alleged harm became more egregious as his case progressed. We believe the BIA misapprehended the basis of the IJ's opinion, failed to address any other issues, and, therefore, is unsustainable. In our view, while Mr. Moab failed to mention that he feared to return to Liberia due to his homosexuality at his airport and credible fear interviews, his subsequent testimony merely included mention of additional harms, rather than any sort of increased egregiousness in the description of the harms themselves.

The BIA stated that Mr. Moab's claim demonstrated "increased egregiousness" because he had failed to mention his homosexuality in his airport and credible fear interviews. Mr. Moab explained his fear of returning to his home country and requested asylum while at O'Hare International Airport, and was detained subsequently and charged with inadmissibility by the Department of Homeland Security. He then had a credible fear interview conducted by an asylum officer who determined that a credible fear of persecution had been established. As previously mentioned, Mr. Moab did not mention his sexual orientation as contributing to this fear during either interview.

We have stated that "airport interviews . . . are not always reliable indicators of credibility." *Dong v. Gonzales*, 421 F.3d 573, 579 (7th Cir. 2005). We analyzed these preliminary interviews at some length in *Balogun v. Ashcroft*, 374 F.3d 492 (7th Cir. 2004), and favorably cited to a list of non-exclusive factors set forth by the Second Circuit in *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004). In *Ramsameachire*, our colleagues on the Second Circuit set forth the following factors for consideration in determining the reliability of an asylum applicant's preliminary interview:

> First, a record of the interview that merely summarizes or paraphrases the alien's statements is inherently less reliable than a verbatim account or transcript. Second, similarly less reliable are interviews in which the questions asked are not designed to elicit the details of an asylum claim, or the INS officer fails to ask follow-up questions that would aid the alien in developing his or her account. Third, an interview may be deemed less reliable if the alien appears to have been reluctant to reveal information to INS officials because of prior interrogation sessions or other coercive experiences in his or her home country. Finally, if the alien's answers to the questions posed suggest that the alien did not understand English or the translations provided by the interpreter, the alien's statements should be considered less reliable.

*Id.* In *Balogun*, we stated additionally that where an "applicant has a reasonable fear of governmental authority (perhaps because the applicant recently has been subjected to governmental abuse or coercion) . . . evasive answers on the question of fear of persecution would not be a reliable indicator of a true lack of fear." *Balogun*, 374 F.3d at 505.

Considering the aforementioned factors, we note that the record of Mr. Moab's credible fear interview is "not a verbatim transcript of [the] interview." A.R. 264. Additionally, because the record contains no transcript of the airport interview or credible fear interview, it is unclear what, if any, follow-up questions were posed to Mr. Moab during the course of these interviews. We also think it reasonable that Mr. Moab would not have wanted to mention his sexual orientation for fear that revealing this information could cause further persecution as it had in his home country of Liberia.

Taking into consideration our precedent regarding the reliability of airport interviews, we cannot say that the BIA's determination that Mr. Moab's claim became markedly more "egregious" is based upon substantial evidence. Mr. Moab's asylum application is consistent with his hearing testimony. In both his application for asylum and at his hearing he discussed his fear to return to Liberia as predicated upon the civil war, the land dispute in his home country and the persecution he had suffered as a result of his sexual orientation. Furthermore, Mr. Moab's account of the bases for his asylum request never became more "egregious"; rather, he simply added an additional harm: persecution based upon his sexual orientation.[2] The BIA's determination that Mr. Moab's account of harm became more egregious, on this record, is not supportable. Because we find that the BIA's decision is not supported by substantial evidence, we remand this case to the Board for more plenary treatment.

---

[2] In order to receive a grant of asylum, a refugee must demonstrate a statutory eligibility for asylum and then demonstrate that discretion should be exercised in his favor. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 443 (1987). One available method by which a refugee may establish statutory eligibility for asylum is to show that he has a well-founded fear of persecution based upon membership in a particular social group. The Board of Immigration Appeals has recognized explicitly that homosexuality qualifies as a "particular social group." *See Matter of Toboso-Alfonso*, 20 I & N 819, 822-23 (1990). The Attorney General designated this decision to serve as "precedent in all proceedings involving the same issue or issues." Attorney General Order No. 1895 (June 19, 1994).

## Conclusion

Because the BIA's determination is premised upon an unsustainable basis, we grant the petition for review and reverse the order of the Board of Immigration Appeals. The petitioner may recover his costs in this court.

PETITION FOR REVIEW GRANTED
REVERSED and REMANDED

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*