NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2008
Decided November 24, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1534

| | |
|---|---|
| ALFIE PASKE TOAR,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A97 149 785 |
| MICHAEL B. MUKASEY, Attorney<br>General of the United States,<br>    *Respondent.* | |

**O R D E R**

Alfie Paske Toar, a native and citizen of Indonesia, came to the United States in 2001 to study at a school of ministry in Iowa. Two years later he filed an application for withholding of removal and protection under the Convention Against Torture, citing a fear of persecution and torture on account of his religion (Christianity). An immigration judge considered Toar's claims in light of an incident in 2000 in which Toar was attacked by Muslims for proselytizing and converting two Muslims to Christianity. But that incident alone, the IJ concluded, did not amount to past persecution, even though Toar lost a tooth in the melee. Moreover, the IJ continued, Toar never reported the incident to the authorities, and therefore he could not establish that the Indonesian government was somehow complicit in his mistreatment. Toar appealed to the Board of Immigration Appeals to no avail. Now he argues before this court that, contrary to the IJ and the BIA's determinations, he is a victim

of past persecution.  Yet the lone incident cited by Toar, however troubling, does not rise to the level of persecution.  Accordingly, we deny the petition for review.

Toar, a Christian all his life, lived in a predominantly Muslim neighborhood in the Minahasa region of Indonesia until 2001.  Christians are a minority in Indonesia, which is 86% Muslim.  *See* http://www.state.gov/r/pa/ei/bgn/2748.htm.  In November 2000 Toar approached two of his Muslim classmates and asked them to visit his church.  They agreed, and on three separate occasions Toar attended services with them.  Toar's proselytization efforts garnered the attention of other Muslims, though, and a group of ten to fifteen Muslims threatened him on three different occasions in December 2000, essentially demanding that he stop going to church.[1]  Later that month the same group confronted Toar on the road to his church, and he attempted to flee.  But the mob caught up with him and hit him from behind, causing him to fall to the ground and break a tooth.[2]  Following the incident Toar left his hometown and sought refuge fifteen miles away.  He stayed away for three months after learning that the mob was looking for him at his parents' house.  Toar did not, however, see a doctor about his injuries, nor did he report the incident to the police on the belief that they would not help him because he is a Christian.

Toar arrived in the United States in August 2001 on a nonimmigrant student visa.  Two years later he sought asylum, withholding of removal, and CAT relief.  At a hearing before an IJ, Toar conceded that his asylum application was untimely but nevertheless pursued his remaining claims. But the IJ concluded that Toar had not experienced past persecution, much less anything approaching torture.  Furthermore, the IJ did not agree with Toar that it was more likely than not that he would suffer persecution upon removal:

> He doesn't know the fate or the whereabouts or the circumstances or even the history of the two people whom he claims to have converted.  And vague threats which he claims his parent's [sic] have received is not sufficiently compelling to conclude that there is a clear probability . . . that he is going to be mistreated or persecuted upon return to Indonesia.

As for the CAT claim, the IJ continued, even putting aside the nature of the harm, "[t]here's no indication in this case that the government of Indonesia has ever been involved in any

---

[1] Unfortunately, the record does not provide any further detail about the threats.

[2] The record does not indicate whether it was the fall or the blows that caused Toar's tooth to fall out.

mistreatment of the respondent. He claims only that he could not rely upon them for protection, although he has admitted that he never sought the police's assistance."

Toar appealed to the BIA, arguing, as relevant here, that he had in fact suffered past persecution. The BIA rejected that argument as well: "The respondent's appellate citations to various decisions published by the United States Court of Appeals for the Seventh Circuit and this Board do not convince us that the single beating that the respondent experienced in Indonesia at the hands of unidentified individuals, in conjunction with several vaguely described threats, rose to the requisite level."

Toar pursues two arguments before this court. First, he contends that he is a victim of past persecution because, he says, the harm he suffered, albeit only once, is so severe as to amount to persecution. Second, he asserts that the IJ improperly required a showing of direct governmental responsibility for the abuse he suffered. If the BIA issues its own opinion, as it did here, instead of supplementing or adopting the IJ's decision, we will review only the BIA's decision. *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). And we will uphold the agency's decision so long as substantial evidence supports the decision to deny Toar's applications. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Moab*, 500 F.3d at 660.

An applicant seeking withholding of removal must demonstrate a clear probability ("more likely than not") of future persecution on account of his race, religion, nationality, membership in a social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A); *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007). If the applicant can show past persecution, as Toar tried to do here, he is entitled to a rebuttable presumption of future persecution. *See Irasoc v. Mukasey*, 522 F.3d 727, 730 (7th Cir. 2008).

Toar asserts that the beating he suffered, and the attendant loss of his tooth, constitutes past persecution. We disagree. When determining whether physical abuse rises to the level of persecution, this court considers the frequency and severity of the harm inflicted. *See Tarraf v. Gonzales*, 495 F.3d 525, 535 (7th Cir. 2007); *Irasoc*, 522 F.3d at 730. And while "[c]onduct can rise to the level of persecution without being life-threatening," *Tarraf*, 495 F.3d at 535, a single incident of abuse can amount to past persecution only if the harm inflicted is severe, *see Irasoc*, 522 F.3d at 730. *See also Zhu v. Gonzales*, 465 F.3d 316, 319-20 (7th Cir. 2006) (holding that evidence of single incident in which government officials beat petitioner and struck his head with a brick, resulting in seven stitches, did not compel finding of past persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2004) (upholding determination of no past persecution although petitioner was beaten until his face swelled and held without food for three days). *But see Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (holding that a petitioner who "was punched, his face bruised, and his finger broken" in retaliation for his political activities had suffered past persecution). Toar relies

heavily on *Irasoc,* in which this court suggested that a man who suffered multiple beatings "by the police while he was cuffed in a jail cell over two days, rendering him unconscious from the pain to his groin," had suffered past persecution. 522 F.3d at 728-30. Toar also compares his mistreatment to the situation detailed in *Asani v. INS*, 154 F.3d 719 (7th Cir. 1998), where police arrested the petitioner, chained him to a radiator, deprived him of food and water, and beat him with a police stick and their fists, knocking out two teeth and leaving marks on his cheeks. *Id.* at 721. *See also Tchemkou v. Gonzales*, 495 F.3d 785, 786-87, 790-94 (7th Cir. 2007) (concluding that petitioner who was imprisoned for three days without food and water, forced to stand in her cell, and beaten on multiple occasions so severely as to "loosen[] several teeth" had suffered past persecution).

No doubt Toar's encounter is troubling, but it is not nearly as severe as the examples cited. We know that Toar was beaten and that he lost a tooth. But the record provides no further detail about the extent of his injuries. *See Irasoc*, 522 F.3d at 730 ("injury must be considered alongside specific details of the incident") (citation omitted). The government seizes on this defect as well, pointing out that "[t]he record is devoid of concrete and specific evidence. Toar's testimony provides no indication of the content of any threats or the specifics of his encounter with a group of people." Indeed, on this thin record there is simply not enough to compel a finding of past persecution.

Toar also contends that in analyzing his CAT claim "the IJ misapplied the law by stating the petitioner needed to demonstrate the persecutions suffered by Mr. Toar were made *by the hands of the government*." Toar never made this argument before the BIA, however, and has therefore waived it. *See* 8 U.S.C. § 1252(d)(1); *Zeqiri v. Mukasey*, 529 F.3d 364, 369-70 (7th Cir. 2008). In any event he misapprehends the IJ's ruling. The IJ's actual words were:

> There's no indication in this case that the government of Indonesia has ever been involved in any mistreatment of the respondent. He claims only that he could not rely upon them for protection, although he has admitted that he never sought the police's assistance.

Toar proposes that by "involved" the IJ meant that the Indonesian government did not itself perpetrate the abuse and therefore the claim could not succeed. That would be incorrect because the regulations do not require torture at the hands of the government; torture includes severe pain or suffering "inflicted by or at the instigation of or *with the consent or acquiescence* of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1) (emphasis added); *Boci v. Gonzales*, 473 F.3d 762, 768 (7th Cir. 2007). But the IJ's decision makes clear that he appreciated both possibilities—that the Indonesian government was directly responsible for Toar's mistreatment or that it turned a blind eye to

the incident.  Toar did not allege the first scenario, so that theory was out.  And without approaching the authorities, the IJ reasoned, Toar could never know whether the government was complicit in his mistreatment.

For these reasons, we DENY Toar's petition.