In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2742

JOHN K. ASARE BOADI,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A078-856-812

ARGUED JANUARY 9, 2013—DECIDED FEBRUARY 7, 2013

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 2001, John Asare Boadi, a Ghanian national that remained in the United States past his visa's authorization, obtained conditional permanent resident status by marrying a U.S. citizen. Two years later, he petitioned the Department of Homeland Security ("DHS") to remove the condition on his status, but the subsequent DHS interview revealed Boadi's

marriage appeared to be a ploy to obtain permanent resident status. DHS initiated removal proceedings, and an immigration judge eventually denied Boadi's request for a good-faith marriage waiver through which Boadi could have avoided removal if he proved he entered his marriage (which had now ended through divorce) in good faith. Boadi now challenges the nature of that proceeding as well as the immigration judge's substantive conclusions. For the reasons set forth below, we deny Boadi's petition for review.

## I. Background

### A. Factual Background

Boadi legally entered the United States in 2000 but overstayed his thirty-day authorization. He subsequently married Veronica Bonds, a U.S. citizen, in 2001. As a result, he adjusted his status to conditional lawful permanent resident in 2003 pursuant to 8 U.S.C. § 1186a(a)(1) ("an alien spouse . . . shall be considered, at the time of obtaining the status of an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis"). In 2007, Boadi and Bonds filed a joint petition on U.S. Custom and Immigration Services form I-751 seeking removal of the "condition" to his permanent resident status, and they attached documentation supporting the authenticity of their marriage. *See* 8 C.F.R. § 216.4(a)(5). DHS's interview with the couple, however, revealed a number of deficiencies in their application. For instance, they lived apart, Boadi in Ohio and Bonds in Illinois. In fact, DHS discovered that Boadi may have

lived with his ex-wife, another Ghanian national that acquired legal status by marrying a U.S. citizen, during his marriage to Bonds. Additionally, Bonds could neither name Boadi's three biological children nor the street on which Boadi lived. They also gave conflicting answers to the same questions regarding their respective children's relationships, who paid the bills at Bonds's home, and the day Boadi arrived for his interview.

After the interview, DHS sent a letter to Boadi expressing its intent to deny the petition. Boadi failed to respond, and DHS terminated his legal status in 2009. DHS subsequently issued a notice to appear on three grounds: (1) obtaining an immigration benefit by fraud or willful misrepresentation, (2) remaining in the United States for a period longer than permitted, and (3) having his conditional lawful permanent resident status terminated.

Boadi and Bonds divorced only weeks after the notice to appear, which automatically terminates an alien's conditional legal status. 8 U.S.C. § 1186a(b)(1)(A)(ii). This ground was distinct from DHS's existing allegation of fraud, but either way, Boadi was now removable under 8 U.S.C. § 1227(a)(1)(D)(i). Facing deportation, Boadi requested a good-faith marriage waiver through which the Attorney General or DHS may discretionarily remove the conditional status (i.e., grant full permanent resident status) to an alien who entered into a qualifying marriage in good faith even though it was later terminated. 8 U.S.C. § 1186a(c)(4)(B). DHS eventually denied this request.

**B. Procedural Background**

Removal proceedings began, and Boadi brought counsel with him to his March 2010 "master calendar" hearing. Boadi conceded removability based on the termination of his conditional lawful resident status, but he opposed the first two grounds. He also requested a transfer to the Cleveland Immigration Court because he still resided in Ohio. DHS opposed this request, and the immigration judge decided to keep the case in Chicago to decide only the issue of removability, reasoning that the evidence of fraud would come from the Chicago DHS agent that interviewed Boadi and Bonds. He continued the case and stated after the next hearing he would "transfer the case to Cleveland."

A few weeks before Boadi's next hearing, his counsel withdrew, and Boadi appeared pro se on March 11, 2011. Despite the immigration judge's previous assurances, he told Boadi this would be his "final" hearing, meaning the court would decide every issue that day, not just removability. In fact, the immigration judge incorrectly asserted that he originally scheduled the hearing "to complete [Boadi's] case." Nevertheless, the immigration judge was willing to continue the case for twenty additional days so Boadi, who expressed a desire to obtain new counsel, could consult an attorney. This compromise did not satisfy DHS. Because the agent that investigated Boadi's marriage was present, DHS requested that the court take her testimony. The immigration judge acceded. Boadi was permitted to cross-examine the witness, but he abandoned his attempt after one question.

Before adjourning, the immigration judge recognized the difficult situation Boadi faced without counsel. He further explained that he asked the government to submit the I-751 application (for the good-faith marriage waiver, not the original joint submission with Bonds), which contained various documents, and he twice asked Boadi whether there was any evidence he wanted the immigration judge to consider, reminding him he could bring additional material to the next hearing.

On March 31, Boadi had what would turn out to be his final hearing. He again appeared pro se. The immigration judge examined Boadi, who attempted to account for the discrepancies in the DHS investigation. He stated he moved to Chicago in November 2001 to marry Bonds before he started at an Ohio nursing school in 2003. He visited Bonds, who later moved to Decatur, Illinois, on the weekends. Boadi also denied living with his ex-wife. The confusion stemmed, Boadi testified, from his children's use of his first wife's address. Boadi said the children received letters with his name on them; that is why it appears that he received mail there. Boadi did admit he used his ex-wife's address for his driver's license but only because he could not use the friend's address where he actually lived. As for the conflicts between his and Bonds's answers, Boadi explained Bonds forgot his children's names because it had been a while since she saw them. Finally, Boadi provided letters from friends supporting the bona fides of his marriage, but the immigration judge noted that some of this information conflicted with Boadi's testimony; namely, that the friends stated Boadi and

Bonds were happily married during a period that Boadi testified they were separated.

Ultimately, the immigration judge did not believe Boadi's account. He made an adverse credibility determination and issued an oral decision finding Boadi was removable under 8 U.S.C. § 1227(a)(1)(D)(i) because the government terminated his conditional status.[1] The immigration judge also found Boadi failed to meet his burden for the good-faith marriage waiver under 8 U.S.C. § 1186a(c)(4)(B), his only application for relief. The immigration judge found the discrepancies produced by the DHS investigation damaging, and Boadi's efforts to compensate for them unpersuasive. Boadi appealed through counsel to the Board of Immigration Appeals, raising the same claims he now raises to this Court and also challenging the immigration judge's decision as clearly erroneous. The Board affirmed, and Boadi now petitions this Court for review.

## II. Discussion

Congress limits our ability to review "any . . . decision . . . of the Attorney General or Secretary of Homeland Security the authority for which is specified . . . to be in

---

[1] Because Boadi was removable under this section, the immigration judge did not reach the issue of removability under sections 1227(a)(1)(A) (obtaining immigration benefit by fraud) or 1227(a)(1)(B) (exceeding the authorization of his visa).

the[ir] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). The good-faith marriage waiver, through which Boadi seeks relief, is such a section. 8 U.S.C. § 1186a(c)(4) ("The Secretary of Homeland Security, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status"). Section 1252(a)(2)(D) restores jurisdiction for colorable legal and constitutional claims, which we review de novo.

Boadi raises four issues on appeal, two of which are legal and two of which are largely factual despite Boadi's efforts to couch them otherwise. We examine the legal claims first: that the manner in which the immigration judge conducted his proceedings was "fundamentally unfair" and that the judge "failed to identify" the evidence admitted into the record. We then turn to Boadi's claims that the immigration judge erred in making an adverse credibility determination and inappropriately weighed the evidence.

## A.  Manner of Proceedings

Boadi primarily takes issue with the manner in which the immigration judge conducted the proceedings. Specifically, Boadi argues that when the immigration judge continued the case after Boadi's initial master calendar hearing, he indicated he would decide the issue of removability, then transfer the case to Cleveland to determine applications for relief. At the second hearing, however, the immigration judge told Boadi it was his "final hearing." He did continue the case for twenty days so Boadi could secure counsel, but he also granted

DHS's request to take testimony from its witness. In essence, Boadi argues that he was willing to contest removability pro se but not applications for relief. The immigration judge's switch, Boadi argues, had two consequences: (1) he did not have a meaningful opportunity to cross-examine the DHS witness or present other evidence, and (2) the immigration judge deprived him of an opportunity to set forth "any and all applications for relief."[2] He contends these consequences violated his rights under 8 U.S.C. § 1229a(b)(4)(B),[3] which provides the "alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."

---

[2] Boadi also argues the immigration judge's conduct violated his rights in a third way—that the Board failed to consider the "implications" of this procedural posture. Boadi does not explain what these implications are beyond having to proceed pro se when the government examined its witness and having twenty days to secure Chicago counsel instead of more time to secure Cleveland counsel, both of which we consider.

[3] Boadi initially asserted that these procedural irregularities deprived him of due process under the Fifth Amendment. However, as Boadi recognizes in his reply brief, the good-faith marriage waiver is discretionary. Discretionary waivers (i.e., the waiver of inadmissibility) are not liberty interests and do not implicate the Constitution. *See Lagunas-Salgado v. Holder*, 584 F.3d 707, 712-13 (7th Cir. 2009); *Kahn v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008).

Preliminarily, even if Boadi believed that the hearing would only concern removability, it is difficult to see how the proceeding surprised him. One contested ground of removability was 8 U.S.C. § 1227(a)(1)(A) (permitting deportation of inadmissible aliens) because he violated 8 U.S.C. § 1182(a)(6)(C)(i), which applies to any "alien who, by fraud or willfully misrepresenting a material fact, . . . has procured[] a visa, other documentation, or admission into the United States or other benefit provided under this chapter." Thus, in proving removability, DHS had to prove Boadi made a misrepresentation in securing his conditional permanent resident status. It did so through the live testimony of the DHS agent that investigated Boadi's marriage to Bonds. Notwithstanding, Boadi was still not deprived of an opportunity to cross-examine the witness. For one, the immigration judge offered him the opportunity to do so at the hearing, which Boadi declined. But more importantly, if Boadi thought this proved inadequate, he could have recalled the witness (or presented new evidence) at the continued hearing twenty days later, either personally or through counsel. He chose not to.

Next, Boadi's conclusory assertion that the immigration judge deprived him of an opportunity to "set forth any and all applications for relief" lacks merit. First, Boadi does not explain why he could not do so during the twenty-day continuance he did receive from the immigration judge nor does he explain why he could not ask for an additional continuance at that hearing to do so. In fact, at no point during the entire proceeding has Boadi suggested there is another application for relief.

This all leads to the glaring absence of prejudice in Boadi's case. *See Delgado v. Holder*, 674 F.3d 759, 769 (7th Cir. 2012) ("Even if Daisy's testimony was inappropriately excluded, Delgado has not shown that he was prejudiced by this exclusion."); *Alimi v. Gonzales*, 489 F.3d 829, 834 (7th Cir. 2007) ("To warrant a new immigration hearing . . . an alien must establish that she was prejudiced, that is, that the error likely affected the result of the proceedings."). Boadi might have preferred the chance to present a case in Cleveland with more time, but even with counsel representing him on appeal he fails to offer a single way in which the manner of the proceeding altered the outcome. It is not enough to suggest that cross-examination might have gone differently or that an attorney (assuming Ohio counsel was available) would have presented different evidence. Maybe a better cross-examination or different evidence would have exposed a weakness in the DHS investigation. But to succeed on appeal, Boadi must point to that alleged weakness and explain how it affected his case. When asked at oral argument what evidence a lawyer would have produced, Boadi's counsel cryptically alluded to documents in the "government's files" without explaining what this evidence was or why it remains unavailable to him. The most specific thing he offered was the evidence submitted with his original joint I-751 petition (not the good-faith marriage petition) through which he originally received conditional permanent resident status. But despite being the person that submitted this information, Boadi does not explain what evidence was in the petition, how it supports his claim, or why he no longer has it.

This flaw in Boadi's argument has more applicability to the application-for-relief claim. To the extent that twenty days was insufficient to discover additional grounds, the immigration judge issued his decision eighteen months ago and Boadi still has not suggested that an actual alternative application for relief exists. We require a showing of prejudice because we want to avoid remanding a case that will inevitably reach the same result. Boadi provides no suggestion that a new hearing would end differently. In short, it is not enough that the immigration judge's alleged errors had the potential to prejudice Boadi. Before granting his petition for review, he must show that the procedural irregularities actually prejudiced him. Otherwise, the error is harmless.

## B.  The Immigration Judge's Consideration of the Evidence

In his next claim, Boadi essentially argues that the immigration judge "must at least identify" all of the evidence submitted to him "for the purposes of building a record on appeal." This argument relates to the government's submission of evidence at his second hearing. Boadi does not contend that this information is not part of the administrative record so we do not see how the immigration judge failed to "build a record on appeal." Instead, he argues that because the immigration judge did not cite to this material in his oral decision, Boadi does not know how much weight the immigration judge attached to each piece of evidence. Boadi seems to suggest that several of the government's

submissions contained multiple documents, and in discussing these submissions the immigration judge should have indicated precisely what portions were considered and how much weight he attached to each portion. No such requirement exists, however. Boadi even recognizes that the immigration judge does not need to discuss all of the evidence; he need only consider it. And Boadi does not contend that the immigration judge failed to meet this requirement. In light of this concession, we do not see how the immigration judge committed legal error.

Importantly, Boadi once again fails to explain how this alleged error prejudiced him, and we do not see how it could have. Because we lack jurisdiction to review factual claims, a clear articulation of the relative weight of the evidence would make no difference to Boadi's appeal. The same is true in typical cases that we review for substantial evidence, upholding an immigration judge's findings "if they are supported by reasonable, substantial, and probative evidence." *Balogun v. Ashcroft*, 374 F.3d 492, 498 (7th Cir. 2004). The relative weight does not matter so long as adequate evidence supports the immigration judge's ultimate conclusion. Accordingly, we find this claim lacks merit.

## C. Credibility Determination

Boadi's challenge to the immigration judge's credibility finding is a factual challenge, which we cannot review under 8 U.S.C. § 1252(a). This sort of claim challenges the immigration judge's assessment of the evidence and presents no claim of law. Moreover, section 1186a further

limits our review by granting the immigration judge the exclusive power to determine "what evidence is credible." Boadi, however, tries to frame the issue as legal in two distinct ways.

First, he argues that the immigration judge conflated his determination of whether Boadi was credible with his determination of whether Boadi met his burden of proof. However, Boadi's characterization of the immigration judge's opinion is incorrect. The immigration judge merely determined Boadi failed to meet his burden of proof *because* he was not credible. Boadi's evidence predominantly consisted of his own testimony and explanations regarding DHS's investigation; without credibility, there was no evidence in favor of Boadi. And in making this credibility determination, the immigration judge reviewed the entire record and explained his reasoning for the determination. He examined the discrepancies uncovered by the DHS witness and explained how Boadi's clarifications were unpersuasive.

Second, Boadi argues the immigration judge did not consider the factors in 8 U.S.C. § 1229a(c)(4)(C) in making the credibility determination. This section is permissive—the "immigration judge may base a credibility determination [on various factors]." Thus, the immigration judge was under no obligation, contrary to Boadi's assertion, to, for instance, consider Boadi's demeanor, evasiveness, or internal inconsistency. *See also id.* (noting "there is no presumption of credibility" and permitting the immigration judge to consider "the totality of the circumstances" and the "inherent plausibility of the ap-

plicant's or witness's account"). Thus, the immigration judge correctly followed the law in determining Boadi was not believable.

### D. Weight of the Evidence

Finally, Boadi's assertion that the immigration judge's decision was against the manifest weight of the evidence, as the name suggests, requests that we reweigh the immigration judge's assessment of the evidence—something we cannot do when the application for relief is in the Attorney General's discretion. 8 U.S.C. § 1252(a). However, Boadi again tries to couch this claim as legal. First, Boadi argues that 8 C.F.R. § 216.5(e)(2)(i)-(iv) required the immigration judge to place more weight on the bills and bank account statements that bore both his and Bonds's name. That regulation, however, merely lists evidence an applicant "may" submit. It does not require the immigration judge to attach a certain weight to it.

Boadi also argues that the immigration judge focused exclusively on Boadi and Bonds's conduct after the marriage. Boadi essentially argues that too much emphasis on after-the-marriage conduct runs afoul of the statute's requirement that the marriage be "entered into" in good faith—i.e., the couple's intention at the time of marriage. However, conduct after the marriage is certainly relevant to determining Boadi's intention at the time of his marriage. A bona fide couple's decision to have children, buy a house together, or introduce one another to the other's children suggests that they intend to begin a

life together. These considerations are not dispositive—a fraudulent marriage could exhibit similar tendencies just like bona fide couples could live apart or speak infrequently. But they are relevant, and an immigration judge is charged with placing the appropriate weight on them, which 8 U.S.C. § 1252(a) prevents us from second guessing.

### III. Conclusion

For the foregoing reasons, we DENY Boadi's petition.