THACKER, Circuit Judge,
concurring:
This court’s review of the agency’s adverse credibility determination entails a relatively' simple inquiry: whether substantial evidence, exemplified by “specific, cogent reason[s],” exists to support the agency’s findings. Singh v. Holder, 699 F.3d 321, 328 (4th Cir.2012) (alteration in original). Here, although the IJ identified a host of secondary factors that negatively impacted Lin’s credibility, he identified two primary reasons — each stemming from Lin’s initial border interview — for his adverse credibility finding: (1) the abortion omission and (2) the marriage discrepancy. Although I find the circumstances of the interview questionable, and I am of the view that such border interviews should be considered with caution, I ultimately agree with my colleagues’ conclusion that the agency’s findings in this case are supported by substantial evidence. For this reason, and because I agree with the majority’s analysis as to the other issues on appeal, I concur.
I.
A so-called “airport” or “border” interview takes place “when an alien is deemed inadmissible immediately upon entering the United States and indicates an intention to apply for asylum or a fear of persecution.” Diallo v. Gonzales, 445 F.3d 624, 631 (2d Cir.2006). As my colleagues recognize, the circuit courts of appeals have uniformly held that these particular interviews should be carefully scrutinized for reliability before being utilized by the fact-finder to evaluate an applicant’s credibility. See, e.g., Joseph v. Holder, 600 F.3d 1235, 1243 (9th Cir.2010); Tang v. Attorney General, 578 F.3d 1270, 1279 (11th Cir.2009); Moab v. Gonzales, 500 F.3d 656, 660-61 (7th Cir.2007); He Chun Chen v. Ashcroft, 376 F.3d 215, 223-24 (3d Cir.2004); Ramsameachire v. Ashcroft, 357 F.3d 169, 179 (2d Cir.2004). The reason for this special attention is straightforward:
The interview takes place immediately after an alien has arrived in the United States, often after weeks of travel, and may be perceived by the alien as coercive or threatening, depending on the alien’s past experiences. Moreover, at the interview, the alien is not represented by counsel, and may be completely unfamiliar with United States immigration laws and the elements necessary to demonstrate eligibility for asylum. Finally, because those most in need of asylum may be the most wary of governmental authorities, the BIA and reviewing court must recognize, in evaluating the statements made in an interview, that an alien may not be entirely forthcoming in the initial interview.
Ramsameachire, 357 F.3d at 179.
In Ramsameachire, one of the leading decisions in this area, the Second Circuit *356 set forth a non-exhaustive list of factors for assessing the reliability of airport interviews:
First, a record of the interview that merely summarizes or paraphrases the alien’s statements is inherently less reliable than a verbatim account or transcript. Second, similarly less reliable are interviews in which the questions asked are not designed “to elicit the details of an asylum claim,” or the INS officer fails to ask follow-up questions that would aid the alien in developing his or her account. Third, an interview may be deemed less reliable if the alien appears to have been reluctant to reveal information to INS officials because of prior interrogation sessions or other coercive experiences in his or her home country. Finally, if the alien’s answers to the questions posed suggest that the alien did not understand English or the translations provided by the interpreter, the alien’s statements should be considered less reliable.
Id. at 180 (internal citations omitted).* Importantly, the Second Circuit “do[es] not regard these factors as essential to be assessed in every case, but simply as helpful matters to be considered where appropriate.” Guan v. Gonzales, 432 F.3d 391, 396 (2d Cir.2005).
II.
In this case, I believe several of the factors outlined in Ramsameachire counsel in favor of scrutinizing Lin’s initial interview with á particularly critical eye. I detail these factors not to disparage the majority’s reasoning, but to emphasize the need to approach these interviews with extreme caution.
As a threshold matter, the discrepancies noted by the IJ are derived primarily from the handwritten notes of the translator contained in the document entitled “Translator Questions.” Although portions of the document reflect Lin’s verbatim responses to the questions asked, other portions slip into the third person and thus appear to be the translator’s own “summar[y]” or “paraphrase[]” of Lin’s statements. Ramsameachire v. Ashcroft, 357 F.3d 169, 180 (2d Cir.2004).
Second, the Translator Questions were not designed “to elicit the details of an asylum claim,” nor is there any evidence the questioning officer “ask[ed] follow-up questions that would aid [Lin] in developing ... her account.” Ramsameachire, 357 F.3d at 180. For example, the border patrol agent asked Lin, “If you are sent back to your country, do you fear that you will be persecuted or tortured?” JA 235. This question is directed at future — not past — persecution, i.e., Lin’s fears with respect to being “sent back” to China. Lin’s answer, although muddled, reflects her desire to have more children and her belief “she would be forced into abortion or [tubal] ligation” in China. Id. The documents from the border interview do not indicate the agent asked Lin any follow-up questions with respect to this “future fear” question, nor do they indicate she was asked any questions at all with respect to past persecution. Rather, the translator’s questions came from a pre-printed worksheet focused on obtaining basic identifying and immigration information. This perfunctory series of questions is a fairly *357 archetypal border interview — and the reason so many courts have stressed that such an interview is not the equivalent of an application for asylum. See, e.g., Singh v. INS, 292 F.3d 1017, 1023 (9th Cir.2002) (an airport interview “d[oes] not necessarily contain questions ‘designed to elicit the details of an asylum claim’ ” (quoting Bala-subramanrim v. INS, 143 F.3d 157, 162 (3d Cir.1998))).
Finally, the overall circumstances of Lin’s border interview deserve mention. She was seized by armed agents immediately after crossing the Rio Grande, handcuffed, and transported by police car to the border patrol station. She testified she had never seen a firearm before and described in detail the terror she felt during the initial detention and questioning. If Lin’s subsequent account of her experience at the hands of the Chinese government is to be believed, she may well have had valid reasons to be less than forthcoming with governmental authorities in such a situation. .See Ramsameachire, 357 F.3d at 179.
In this case, the IJ, albeit not in so many words, acknowledged each of the above circumstances and concluded, nevertheless, that the border interview was sufficiently reliable so as to serve as a basis for his adverse credibility determination. The record here does not compel a contrary result. See Niang v. Gonzales, 492 F.3d 505, 511 (4th Cir.2007) (“[W]here the record plausibly could support two results: the one the IJ chose and the one [the petitioner] advances, reversal is only appropriate where the court find[s] that the evidence not only supports [the opposite] conclusion, but compels it.” (alterations in original) (internal quotation marks and citation omitted)). I also observe that, even if we were to follow the lead of the Eleventh Circuit in distinguishing between simple omissions and impermissible contradictions in the context of border interviews, see Tang v. Attorney General, 578 F.3d 1270, 1279 (11th Cir.2009), Lin has offered no argument with respect to the IJ’s reliance on the direct contradiction present in her marital status testimony. Inasmuch as this contradiction alone, coupled as it is with the myriad secondary factors identified by the IJ, would be sufficient to support the agency’s findings, see Djadjou v. Holder, 662 F.3d 265, 273-74 (4th Cir.2011), I see no grounds for reversing the credibility determination in this case.
III.
The issue in the present case, as in so many immigration cases, turns on the standard of review. While the IJ could have — and perhaps should have — engaged in a more detailed analysis of his reasons for relying on the border interview, I am satisfied the record of this case reflects that the appropriate factors were adequately considered. ■ I thus concur in denying the petition for review.

 The Second Circuit derived these factors from two Third Circuit decisions, Senathirajah v. INS, 157 F.3d 210 (3d Cir.1998) and Balasu-bramanrim v. INS, 143 F.3d 157 (3d Cir.1998), and its reasoning has been approved by several other circuit courts of appeals. See, e.g., Moab, 500 F.3d at 661 (considering the Ramsameachire factors); Singh v. INS, 292 F.3d 1017, 1022 (9th Cir.2002) (considering the same Senathirajah and Balasubramanrim factors).