In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 19-2175

BENJAMIN N. OMORHIENRHIEN,

*Petitioner,*

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent.*

---

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A200-381-476

---

ARGUED JANUARY 8, 2020 — DECIDED MARCH 13, 2020

---

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Benjamin Omorhienrhien is a Nigerian citizen who received conditional permanent resident status based on his marriage to a United States citizen. The two later divorced, and Omorhienrhien sought to remain in the country by submitting a petition to remove the conditions on his residency. An obstacle loomed—the petition must ordinarily be jointly filed by the non-citizen and his spouse, but Omorhienrhien's former spouse was no longer in the picture.

To sidestep the roadblock, Omorhienrhien requested a discretionary waiver of the joint-filing requirement, which is available to non-citizens who entered their failed marriages in good faith. After hearing all the evidence, an immigration judge was not persuaded that Omorhienrhien married his wife in good faith and denied him the waiver. The Board of Immigration Appeals agreed and dismissed the appeal. Omorhienrhien now asks us to step in. Because our review is limited to legal errors and we find none, we decline to do so.

## I

### A

Benjamin Omorhienrhien came to the United States as a visitor from Nigeria in 2008. Not long after arriving, he began a relationship with Linda Harris, a citizen whom he met through friends. The two exchanged vows a few months later. The following year, Harris filed Form I-130 (Petition for Alien Relative), which would allow Omorhienrhien a path to residency based on their marriage. U.S. Citizenship and Immigration Services denied the petition upon discovering that Omorhienrhien had been legally married to another woman in Nigeria when he tied the knot with Harris, though the Nigerian marriage had since ended. Omorhienrhien and Harris remarried and then submitted a new petition. That effort succeeded, and Omorhienrhien received conditional permanent residency in January 2011.

For an immigrant like Omorhienrhien who relies on his marriage to a United States citizen for permanent residency, the status comes with conditions, the greatest of which is that it lasts for only two years. See 8 U.S.C. § 1186a(a)(1). To remove the conditions, Omorhienrhien had to do two things—

submit, together with his citizen-spouse, Form I-175 (Petition to Remove Conditions on Residence), and then appear with his spouse for a personal interview. See *id*. § 1186a(c)(1). If Omorhienrhien did not check both boxes, the Department of Homeland Security would terminate his permanent resident status two years after he received it. See *id*. § 1186a(c)(2).

The problem for Omorhienrhien was that he and Harris had already parted ways by the time he filed the petition to remove the conditions on his residency. Their divorce became final in July 2011, about six months after he obtained conditional permanent resident status. This meant that Harris did not join Omorhienrhien in filing the petition and was not around to participate in the mandatory personal interview.

But the law offered Omorhienrhien another way to remove his residency conditions. He could seek a so-called hardship waiver. The Secretary of the Department of Homeland Security has the discretion under certain circumstances to remove conditions on residency despite an immigrant failing to meet the joint-petition and joint-interview requirements. One of those circumstances is when the immigrant, though now divorced, entered into a marriage in good faith. See 8 U.S.C. § 1186a(c)(4)(B). Omorhienrhien sought a hardship waiver on that ground when he filed his petition, but USCIS denied it in March 2014.

B

The denial triggered removal proceedings. See 8 C.F.R. § 1216.5(f). In the immigration court, Omorhienrhien requested review of the denial of his petition to remove the conditions on his residency, including the USCIS decision denying him a waiver. The immigration judge held a hearing on

the issue in December 2017. The hearing sought to answer the question at the center of Omorhienrhien's request for a hardship waiver—whether he married Harris in good faith and not for the purpose of obtaining an immigration benefit.

Omorhienrhien testified about his relationship with Harris. He explained that he was married in Nigeria but believed that the relationship had legally dissolved before he left for the United States. Once he arrived, his cousin introduced him to a friend, Pretty Hunt, and Omorhienrhien moved into her basement. Hunt introduced him to one of her coworkers, Linda Harris, and the two began a relationship in July 2008. Omorhienrhien proposed to Harris just a few months later so that they could live together without running afoul of his religious beliefs. At that point, Harris occasionally stayed with Omorhienrhien at Hunt's home.

The couple married in December 2008 in a ceremony attended by a few friends. After learning of the Nigerian marriage complication, they remarried in June 2010. Omorhienrhien testified that he loved Harris and married her for that reason alone. He added that he lived with Harris in Hunt's home after their first wedding. For some of that time, Harris's daughter and grandsons lived with them. But in March 2011, Harris left and later asked for a divorce. Omorhienrhien was not certain what spurred the split.

The government did not buy Omorhienrhien's account and challenged it with documents that seemed to contradict that he and Harris lived together from December 2008 to March 2011. In the decree dissolving his marriage to Harris, the issuing court found that the parties "were married on December 2, 2008 and they have been separated since July 2009." When asked for an explanation, Omorhienrhien claimed the

dissolution decree was false. But the government had more—a lease in Harris's name for March 2010 to the end of February 2011. The lease not only named her alone (at an address other than Hunt's) but also had appended to it a rental application in which Harris stated she was single and expected her only visitor to be her grandchild. Omorhienrhien explained this discrepancy by positing that Harris probably signed the lease for her daughter.

Two other witnesses testified at the hearing. Both said that they had attended Omorhienrhien and Harris's wedding, had seen the couple together at Hunt's home, and perceived them to be a genuine married couple. Omorhienrhien also submitted documents like family photographs, statements from friends, and medical records for Harris's grandchild.

Following the hearing, the immigration judge found that Omorhienrhien had not shown that his marriage was bona fide and denied him a waiver of the requirements necessary for success on his petition to remove the conditions on residency. In doing so, the judge noted that she believed Omorhienrhien had testified credibly, by which she meant he provided information "to the best of his knowledge and recollection." From there the judge emphasized inconsistencies in the record with respect to Omorhienrhien and Harris's living arrangement and separation. The judge also found troubling the lack of any objective evidence—including, for example, insurance policies, home ownership documents, and travel tickets—demonstrating that Omorhienrhien and Harris married with the intent to share a life together.

Omorhienrhien then sought review by the Board of Immigration Appeals. The Board dismissed the appeal because it agreed with the immigration judge that Omorhienrhien had

not met his burden to prove that his marriage to Harris was in good faith. The Board added a cramped and confused interpretation of the immigration judge's credibility finding. It acknowledged that the judge found Omorhienrhien credible but clarified that it did not understand her to credit all of his testimony. The Board did not explain how those two things could be reconciled.

Omorhienrhien now petitions for our review.

## II

### A

Congress has imposed tight restraints on our authority to review discretionary immigration decisions, generally removing them from our jurisdiction. See 8 U.S.C. § 1252(a)(2)(B)(ii). The Board's denial of Omorhienrhien's application for a good-faith marriage waiver is one such decision. See *Boadi v. Holder*, 706 F.3d 854, 857 (7th Cir. 2013). The narrow jurisdiction we do possess extends only to constitutional claims and legal questions. See 8 U.S.C. § 1252(a)(2)(D). In that limited endeavor to correct legal errors, we review the immigration judge's opinion as supplemented by the Board's. See *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007).

Omorhienrhien insists that he raises a question of law— the immigration judge applied too high a standard of proof. All agree that Omorhienrhien bore the burden of proving by a preponderance of the evidence that he married Harris in good faith, and the immigration judge expressly adopted that standard. Omorhienrhien's point is more subtle. He argues that the judge, although saying the preponderance standard applied, proceeded to review the evidence and make findings under a more demanding standard. While we follow

Omorhienrhien's argument just fine, it comes dangerously close to inviting us to step into the forbidden territory of reviewing the immigration judge's factual determinations. Our review must remain more limited: we look only at whether the immigration judge applied the correct legal standard.

B

Omorhienrhien takes his cue from *Lara v. Lynch*, 789 F.3d 800 (7th Cir. 2015), where an immigrant succeeded in his quest for review under the same argument but different circumstances. Gerardo Hernandez Lara stood in a similar procedural posture as Benjamin Omorhienrhien. Lara had received conditional residency through his wife, a United States citizen, and the two jointly filed the petition to remove the conditions. See *id.* at 801–02. Lara's wife likewise left him before it came time for the couple to fulfill the joint-interview requirement. Like Omorhienrhien, Lara then sought a waiver of the requirement by showing that his marriage had been in good faith. See *id.* at 802.

The similarities end there. Lara testified that he married his ex-wife because he loved her, and the government did not submit any opposing evidence—literally none. See *id.* at 803. The immigration judge nevertheless denied Lara's petition for a waiver, finding that his testimony was neither sufficiently detailed nor consistent with some of his documentary evidence. See *id.* at 804. The judge did not make a credibility determination. On appeal the Board assumed that Lara's testimony was credible but from there concluded that Lara's account was itself insufficient to meet the preponderance of evidence standard. See *id.*

When Lara's case arrived to our court, we granted his petition for review because the Board "applied too high a burden of proof." *Id*. Our reasoning was as straightforward as the record evidence: with no opposition from the government, Lara testified that he married his wife because he loved her—not to obtain an immigration benefit—and "[i]f, as the Board assumed, [Lara] testified truthfully, then this testimony alone is enough to prove that his marriage to [his ex-wife] was more likely than not bona fide." *Id*. We therefore held "[t]he Board's failure to reach that conclusion is a legal error." *Id*. at 805.

C

This case is not *Lara*. The immigration judge saw two key distinctions, and both are spot-on.

First, unlike in *Lara*, where the government offered no evidence whatsoever to challenge the legitimacy of the marriage, see *id*. at 803, here the government presented evidence that conflicted with and discredited Omorhienrhien's testimony. Take, for example, Omorhienrhien's testimony that he and Harris lived together from December 2008 to March 2011. The government responded by presenting a lease for an apartment in Harris's name that began in March 2010, when she was supposedly living with Omorhienrhien. The immigration judge in Lara's case had to decide whether his testimony, unchallenged by any objective evidence from the government, met the bar for relief. But here the immigration judge weighed the evidence and found that contradictory documents undermined Omorhienrhien's testimony. More to it, the judge determined that absent additional corroborating evidence, Omorhienrhien's testimony fell short of establishing by a preponderance that he married Harris in good faith. We do not have the jurisdiction to second-guess that weighing of

evidence. See *Adebowale v. Mukasey*, 546 F.3d 893, 896 (7th Cir. 2008) ("[A] disagreement with the weight assigned by the immigration courts to particular evidence does not present a question of law.").

So, too, is there a second difference with *Lara*. The REAL ID Act provides that "[w]here the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1229a(c)(4)(B). In *Lara*, neither the Board nor the immigration judge faulted the petitioner for failing to come forward with available corroborating evidence. See 789 F.3d at 806. Not so here.

The immigration judge voiced a concern over "the complete lack of objective evidence" and identified a laundry list of documents that might have assuaged the unease—something even as simple as a ticket showing that Omorhienrhien and Harris went on a vacation together. Omorhienrhien contends that he had no access to any such evidence. By way of example, he states he had an informal living arrangement in someone's basement, leaving him without a lease to give the judge. But Omorhienrhien offers no explanation for why he could not provide the immigration court with the other specific examples of missing corroborating evidence. The immigration judge thought it surprising, for instance, that Omorhienrhien lacked any evidence from a community or religious organization, given that he was a preacher and said he and Harris attended church together. On this record, we cannot say that the judge's conclusion that Omorhienrhien lacked available corroborating evidence was unreasonable. See

8 U.S.C. § 1252(b)(4) ("No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence … unless the court finds … that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.").

In the end, then, what was true for Lara is not for Omorhienrhien. The immigration judge here applied the correct standard of proof, both in word and in substance. Finding no legal error and lacking the authority to go beyond that boundary, we DENY the petition for review.