In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2411

TIE XIA CHEN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A200 025 604

ARGUED MARCH 3, 2015 — DECIDED APRIL 1, 2015

Before POSNER, KANNE, and TINDER, *Circuit Judges*.

PER CURIAM. Tie Xia Chen, a Chinese citizen, seeks relief from removal on the ground that he will be persecuted for violating his country's one-child policy. He petitions for review of the Board's denial of his motion to reopen. In that motion, Chen argued that his attorneys had mishandled his case by neglecting to offer available evidence that would have resolved deficiencies in his asylum application identi-

fied by an immigration judge. Because the Board largely ignored this potentially meritorious argument, its ruling is procedurally defective, so we grant the petition and remand for further proceedings.

Chen entered the country in 2005. The Department of Homeland Security now seeks to remove him on the ground that he is "an alien present in the United States without being admitted or paroled." *See* 8 U.S.C. § 1182(a)(6)(A)(i). Conceding removability, Chen has applied for asylum, withholding of removal, and relief under the Convention Against Torture. He contends that Chinese authorities will persecute him for refusing, by having two children, to follow the one-child policy.

At his removal hearing Chen testified about his claim of persecution. He explained that he fled China after he was arrested and beaten in his home province of Fujian when officials found out that his wife was pregnant with their second child. Police detained, interrogated, and beat him for six months in 2004 and early 2005 as they tried to find the whereabouts of his wife. The police released him after his parents paid 3,000 yuan (about 480 dollars), on the condition—as reflected in written notices—that his wife undergo forced sterilization or they pay a fine of 20,000 yuan (approximately 3,200 dollars) to register the son. He testified that his wife has refused to be sterilized. (His written application for relief from removal, in one translation from Mandarin, implied that his wife has already been sterilized.) Chen fled the country without paying any fine, and his wife and daughter now hide from authorities at a relative's house; their son lives with Chen's parents. Chen explained that he could not hide in China and still find work. (When a border agent de-

tained him temporarily in Texas, Chen similarly told the agent that he had come to this country to seek work.) Chen's brother's adoptive father, Patrick Meredith, also testified at the hearing. He said that he met Chen's two children when visiting China in 2005.

During the removal proceedings, the case boiled down to whether Chen in fact has two children. His first attorney, Marian Ming, requested from Chen and submitted to the IJ documents to corroborate Chen's claim that he has two children. These included photographs of Chen's children, notices from the birth control office threatening sterilization or a fine, and birth certificates for Chen (translated into Spanish), his wife, and his son and daughter. The Forensic Document Laboratory of the Department of Homeland Security determined that the son's birth certificate was counterfeit. According to Chen, Ming did not tell him that the lab deemed the birth certificate a counterfeit and instead just told him that it was "useless." Because, Chen explained, Ming told him that he needed another birth certificate and Chen wanted to comply with his attorney's request, he asked his father to get a new one, which the Forensic Document Laboratory determined was also counterfeit. Although Chen knew that because his son was not registered a genuine birth certificate is generally not available, he believed that his son's documents were authentic because his father got them from a government office. Chen later replaced Ming with attorney Yongbing Zhang, who represented him when he testified at his removal hearing. Zhang submitted additional evidence to corroborate Chen's claim that he had two children in violation of the one-child policy, including letters from Chen's parents and wife that refer to both children, and a message from his daughter.

Focusing initially on Chen's testimony, the IJ denied re-
lief. She explained that testimony alone, if found credible,
can satisfy an applicant's burden, but that, because of several
"major" inconsistencies, Chen's "testimony [was] insuffi-
ciently persuasive to meet his burden of proof." The "most
significant inconsistency" was that Chen's translated asylum
application asserted that his wife already had been sterilized
while he testified she would be sterilized if caught. The IJ
also noted that (1) Chen could not explain why his birth cer-
tificate was translated into Spanish; (2) Chen's testimony
about meeting Patrick Meredith changed (he supposedly
said that he first met him in China, but later placed the first
meeting in the United States; Chen also supposedly varied
his account of whether he and Meredith met while Chen was
detained in Texas); and (3) Chen suggested that he came to
this country for work, not to avoid persecution, because he
told the IJ and a border agent that he cannot find work in
China.

Because Chen's testimony alone was insufficient, the IJ
examined whether he had corroborated his claim and found
that he had not. The IJ determined that his son's birth certifi-
cates were not corroborative because they were fraudulent,
and Chen knew or suspected the fraud because he testified
that he knew that because his son was not registered, he
could not get a valid birth certificate. The IJ added that, even
if Chen did not suspect the fraud, he needed other corrobo-
ration. But the IJ discounted Chen's other corroboration as
inconsistent with some evidence or otherwise defective. The
letter from his parents that referred to Chen's two children
contradicted a part of Chen's testimony by saying that they,
not Chen, came up with the idea to get the birth certificates.
His daughter's letter implied that she is now eleven years

old, but her birth certificate suggested that she was only nine. And the Chinese government's notices threatening sterilization or a fine were not authenticated. Chen unsuccessfully appealed the IJ's decision to the Board.

Chen then retained new counsel and moved the Board to reopen based on Ming and Zhang's ineffective assistance. In a detailed brief, Chen methodically argued that each inconsistency or deficiency identified by the IJ could be attributed to his counsel's incompetence. Among other failings, Chen maintained that they neglected to submit evidence or argument that (1) the discrepancy between his written asylum application and his testimony about his wife's sterilization was based on a mistranslation, which Ming has now acknowledged; (2) his birth certificate was translated into Spanish because he had once sought a visa to travel to Spain; (3) the IJ mischaracterized his testimony about when he met Meredith; (4) the border agent's report about Chen's reasons for coming to this country was unreliable; (5) the ostensible discrepancy in his daughter's age arose from a traditional Chinese method of age counting; and (6) the IJ improperly required that the sterilization notices be authenticated. Chen also argued that Ming's negligence misled him into submitting the fraudulent birth certificates because she never explained to him that the government was questioning the authenticity of his son's birth certificate but simply told him he needed to submit another one.

The Board denied Chen's motion to reopen. It assumed that the attorneys' performance was substandard and found that Chen complied with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). But, focusing exclusively on the birth certificates, it ruled that Chen failed to

show prejudice. The Board observed that, even though the IJ "did not make an adverse credibility finding," the IJ required Chen to corroborate his claim, but Chen knew or suspected that the birth-certificate corroboration was fraudulent. Without that required corroboration, the Board concluded, his claim was doomed, so his attorneys did not prejudice him: "Given that the respondent submitted fraudulent documents that were intended to corroborate a matter at the heart of the respondent's asylum claim, we conclude that the respondent's applications for asylum and related relief would have been denied notwithstanding any other issues raised in the motion to reopen."

On appeal the parties offer two possible interpretations of the Board's ruling, but both necessitate a remand. According to Chen, the Board ruled that because he knew that his son's birth certificates were fraudulent, his claim necessarily fails regardless of his attorneys' representation. If that is the correct reading of the Board's decision, then its reasoning is erroneous. A finding that an applicant knowingly offered fraudulent evidence allows an IJ to find an applicant not credible, but it does not *require* an adverse credibility ruling or compel the IJ to deny the claim solely based on the fraudulent submission. *See Hanaj v. Gonzales*, 446 F.3d 694, 698–700 (7th Cir. 2006); *Kourski v. Ashcroft*, 355 F.3d 1038, 1039–40 (7th Cir. 2004) ("Of course, even if he forged it himself, this would not prove that he was not Jewish, as it is not unknown for persons who have valid claims but no evidence to support it to forge some evidence."). And here the Board acknowledges that, even though the IJ found that Chen knew or suspected the fraud, she made *no* adverse credibility finding. Therefore, on Chen's interpretation of the Board's ruling, a remand is needed for a corrected inquiry

into prejudice. Without treating the fraud as automatically barring relief, the Board must decide whether Chen was bound to lose his case even with competent counsel.

The government counters that the Board has already so ruled. According to the government, the Board ruled that because Chen knowingly submitted false birth certificates, he did not corroborate the heart of his claim, and therefore, lacking this essential corroboration, Chen would have lost even with competent counsel. But if the Board ruled that Chen must lose because he lacks corroboration, its ruling is procedurally flawed because it ignores Chen's main argument in his motion to reopen: the IJ required corroboration only because his attorneys ineptly caused the IJ to find Chen's testimony inconsistent. If his attorneys had properly presented his testimony, Chen explains, any inconsistencies might have vanished, and the IJ might have found his testimony, standing alone, sufficient to carry his burden without the need for corroboration. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *cf. Fadiga v. Att'y Gen. U.S.*, 488 F.3d 142, 162–63 (3d Cir. 2007) (finding that counsel prejudiced petitioner when the IJ's doubts about petitioner's credibility were based on inconsistencies attributable to ineffective counsel, who also failed to provide available corroborating evidence).

The Board never evaluated Chen's argument that, but for his attorneys' failure to resolve the inconsistencies cited by the IJ, she would not have required corroboration or would have found the corroboration (beyond the birth certificates) sufficient. For example, "the most significant inconsistency," according to the IJ, was that Chen asserted in his written application for asylum that his wife had been sterilized but testified that she was only threatened with sterilization. But in

his motion Chen offered evidence that Ming had the application mistranslated and that attorney Zhang, who spoke Mandarin, carelessly left it mistranslated. Chen's motion also goes through every other supposed inconsistency or deficiency—the Spanish translation of his birth certificate, meeting Meredith, his daughter's age, his reasons for coming to the United States, and document authentication—and offers the resolution that his attorneys neglected to furnish. The Board addresses none of this evidence or its possible effect on the IJ's decision.

Moreover, even if the IJ would have wanted corroboration beyond his testimony, a birth certificate was not the only evidence that would have sufficed. (In fact, because Chen claimed that he was persecuted for violating the one-child policy, he necessarily could not obtain a valid birth certificate for his son because birth certificates are not issued for unregistered children. Yet his attorney misadvised him to get one.) As Chen notes, he submitted corroboration other than the birth certificates. Meredith testified that he had seen both of Chen's children in China, the letters from Chen's parents and Chen's wife both discussed that Chen's son was living with Chen's parents, and photos showed Chen's wife with their son. A competent attorney, Chen argued in his motion to reopen, could have overcome the IJ's reasons for discounting this further evidence or explained why additional corroborating evidence could not be reasonably attained. The Board, however, addressed none these contentions either.

Where, as here, the Board ignores a potentially meritorious argument when deciding a motion to reopen, it abuses its discretion. *See Moosa v. Holder*, 644 F.3d 380, 384, 386

(7th Cir. 2011); *Kebe v. Gonzales*, 473 F.3d 855, 857–58 (7th Cir. 2007) (citing cases that were remanded because "the BIA's or the IJ's failure to discuss potentially meritorious arguments or evidence calls into question whether it adequately considered these arguments"). This principal applies to motions to reopen based on claims of ineffective assistance. *See Filja v. Gonzales*, 447 F.3d 241, 256 (3d Cir. 2006) (remanding when Board's prejudice holding on ineffective assistance of counsel claim suggested Board did not sufficiently review record or applicant's arguments); *Mohammed v. Gonzales*, 400 F.3d 785, 792–93 (9th Cir. 2005) (finding Board abused its discretion when it denied motion to reopen for ineffective assistance in an "incomplete opinion" that did not consider all submitted evidence that showed petitioner was prejudiced by counsel's performance).

Thus, the petition for review is granted. The Board should determine if Chen's attorneys incompetently neglected to offer evidence and arguments that might have resolved the inconsistencies identified by the IJ. If so (or if the Board assumes so), it should decide whether the IJ would have ruled against Chen anyway.