In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3370

ASHRAF HABIB,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent*.

Petition for Review of an order of the
Board of Immigration Appeals.
No. A076 203 300

ARGUED APRIL 28, 2015 — DECIDED MAY 29, 2015

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Ashraf Habib, a 56-year-old citizen of Pakistan, petitions for review of an order of the Board of Immigration Appeals denying his motion to reopen on the ground of ineffective assistance of counsel. Habib was charged with removability for misrepresenting a material fact—his marital status in Pakistan—to gain residency. At a hearing before the immigration judge, Habib's lawyer made a couple of missteps that led to Habib being ordered removed on the

ground that he had obtained immigration benefits based on a material misrepresentation. Habib filed an appeal with the Board, as well as a motion to reopen based on ineffective assistance of counsel. The Board affirmed the IJ's decision and rejected Habib's arguments that his lawyer was ineffective. We conclude that the Board abused its discretion when it determined that Habib was not prejudiced by his lawyer's mistakes, and we grant Habib's petition for review.

## I. BACKGROUND

In the late 1980s, Habib married a woman in Pakistan and had three children with her in that country. It is unclear when or how Habib came to the United States after these events (the record shows only that he entered the country in 1981 on a tourist visa). But in 1996, he married Ruby Bualice, a U.S. citizen, and three years later adjusted his status to that of lawful permanent resident based on that marriage. Habib did not disclose any children or prior marriages in his application to adjust status or during the related interview. He applied for naturalization in 2004 and again neglected to list any children or prior marriages on the form. When interviewed the following year by officials of United States Citizenship and Immigration Services (USCIS), he told them that Bualice was his first wife.

USCIS denied Habib's application for naturalization in 2010 on the ground that he had obtained lawful permanent residency by fraud and thus was ineligible for naturalization. *See* 8 C.F.R. § 316.2(a)(2). (Bualice died in 2008, before USCIS ruled on Habib's application.) In its decision, USCIS explained that its "investigation revealed" that when Habib married Bualice and obtained permanent residency based on that mar-

riage, he was still married to Feroza Muhammad Arshraf, a woman in Pakistan with whom he had fathered three children. USCIS stated that this information was confirmed by "[c]orrespondence from the Provincial Headquarters Sindh, National Database and Registration Authority (NADRA) in Karachi, Pakistan." By not disclosing his Pakistani wife and children on his adjustment application, USCIS concluded, Habib had obtained immigration benefits in violation of 8 U.S.C. § 1182(a)(6)(C)(i). As further evidence of Habib's "fraud/misrepresentation," USCIS cited a letter from staff at the nursing home where Bualice had resided from 2001 until her death in 2008. The 2006 letter stated that Habib had never been "seen at [the] facility," indicating that Habib "had never gone to visit" Bualice. Habib was issued a Notice to Appear charging him with removability under 8 U.S.C. § 1227(a)(1)(A) as an alien who was inadmissible at the time he adjusted status both because he had obtained permanent residency by fraud or willful misrepresentation of a material fact, *see id.* § 1182(a)(6)(C)(i), and because he lacked a valid entry document, *see id.* § 1182(a)(7)(A)(i)(I).

At the first hearing before the IJ in 2012, Habib's attorney stated that he had not seen the Notice to Appear but, when given a copy of the document, nonetheless proceeded to admit and deny the numbered allegations without consulting Habib, who was present in the courtroom. Counsel denied allegation 7, which states that Habib's marriage to Bualice "is not legally valid since [Habib was] not divorced from [his] wife in Pakistan." But in the next breath, counsel contradicted himself by admitting the materially identical allegation 8, which states that Habib was "not validly married to a United States citizen" when he adjusted status in 1999. Counsel also admitted that Habib had three children in Pakistan. Counsel denied, howev-

er, that Habib was removable. At the same hearing, the IJ asked Habib what language he best spoke and understood. Habib answered, "English," and his lawyer agreed that this was his "best language."

At the beginning of the final hearing nine months later, Habib's lawyer for the first time submitted a document titled "Divorce Deed" showing that Habib had divorced his Pakistani wife in 1994, two years before his marriage to Bualice. Counsel stated that he "believed" he previously had submitted a copy of this divorce decree to the government. But when the government's attorney disputed counsel's assertion, counsel said that he "just got it recently." The IJ stated that Habib could be questioned about the divorce decree during his testimony but reserved ruling on the admissibility of the document.

Habib then testified, admitting that he had not listed his first marriage or his three children on his adjustment application. He had not intended "to deceive the Government," he said: He omitted the information from his application and did not mention it during his interview (at which Bualice was present) because he was worried that Bualice would be angry if she learned of his first marriage and his Pakistani children. Habib testified that he had also excluded the information from his naturalization application so that the document would be consistent with his application for adjustment. Habib talked about his relationship with Bualice but throughout his testimony had trouble remembering dates. He said, for example, that he lived with Bualice from 1996 to 2003. But he also stated that they stopped living together in 2001, after she had a brain stroke, and he later gave 1999 as the year that they no longer shared a residence.

Habib stated that he had divorced his Pakistani wife in 1994, but this testimony was immediately challenged. Both the government's attorney and the IJ pointed out that Habib's testimony was contrary to his lawyer's admitting allegation 8 in the Notice to Appear, which states that Habib's marriage to Baulice was invalid. In response, Habib's lawyer mumbled something about a "mistake" but did not move to retract the admission of allegation 8.

Two of Habib's friends also testified that Habib and Bualice lived together before she went to a nursing home. Both of the friends said that the couple's marriage appeared to be normal. One friend said that "they both loved each other and they were really happily married," and the other friend stated that they were "a lovable couple[] to each other."

The government submitted a letter from Pakistan's National Database and Registration Authority listing Feroza Muhammad Arshraf as Habib's wife and a partially translated printout of Habib's family records from the Registration Authority's online database. The government also submitted the 2006 letter from Bualice's nursing home, which states that Habib had not visited her.

The IJ concluded that Habib was removable both because he willfully misrepresented a material fact to obtain permanent residency and because he had no valid entry document, and ordered Habib removed to Pakistan. The IJ determined that Habib's failure to disclose his children and his first marriage was material because the misrepresentation "cut off [a] line of inquiry and prevented the Government from conducting a full analysis of all factors relevant to the validity of" Habib's marriage to Bualice. Thus, the IJ determined, the government's evidence established a rebuttable presumption that Habib ob-

tained adjustment because of his misrepresentation. Habib did not rebut that presumption, the IJ explained, because he had not proved that he met the statutory requirement for admission regardless of the misrepresentation. In reaching this conclusion, the IJ emphasized that the divorce decree submitted by Habib "cannot be considered because it was not timely filed and the Government has never been given the opportunity to inquire into the reliability of the document."[1] Throughout the decision, the IJ referred to counsel's admission that Habib's marriage to Bualice was invalid, even mentioning in a footnote that, although "counsel claimed" that the admission was a "mistake," he never "move[d] to amend his pleadings or withdraw the admission."

Habib obtained new counsel, appealed to the Board and, while that appeal was pending, moved to reopen on the ground of ineffective assistance of counsel. He maintained in the motion that he was prejudiced by counsel's failing to request an interpreter, counsel's neglecting to timely submit the divorce decree to the immigration court, and counsel's admitting allegation 8 in the Notice to Appear (that Habib's marriage to Bualice was invalid). In support of his motion, Habib submitted an affidavit in which he stated that he provided his former attorney "with all the documents he requested … , including [the] divorce decree." He also submitted the attorney's response—a letter signed not by the lawyer but written on his behalf by someone at his law firm (the signature line contains only the firm's name)—which stated that counsel "did not re-

---

[1] The IJ elaborated in a footnote that her conclusion that the divorce decree was not timely filed rested on subsection 3.1(b)(ii)(A) of the Immigration Court Practice Manual, which requires that filings "be submitted at least fifteen (15) days in advance of the hearing."

ceive the divorce decree timely to submit it with the other documents." Habib maintained in his motion to reopen that this statement from counsel's law firm was false.

In a single order, the Board adopted and affirmed the decision of the IJ and denied Habib's motion to reopen and remand on the basis of ineffective assistance.[2] The Board explained that Habib was not prejudiced by counsel's neglecting to request an interpreter because Habib himself stated that English was "his best language" and his motion to reopen did "not specify any testimony that was inaccurate or incomplete because of any language deficiency." The Board stated that it could not conclude that counsel's failure to timely submit the divorce decree resulted from "deficient performance" because, the Board said, neither Habib nor his former lawyer "specifies precisely when [Habib] gave the divorce decree to counsel." Finally, the Board determined that Habib had not shown he was prejudiced by counsel's admitting that his marriage to Bualice was invalid because, the Board explained, "DHS submitted substantial evidence challenging the validity of the respondent's marriage to his United States citizen wife," and Habib had admitted during testimony that he "'lied on purpose' when he failed to mention his first wife and his children" in his applications.

## II. ANALYSIS

In his petition for review, Habib challenges the Board's denial of his motion to reopen based on ineffective assistance. To reopen his proceedings on the ground that he received ineffective assistance, Habib had to (1) "comply with certain proce-

---

[2] When a motion to reopen is filed with the Board while an appeal is pending, the Board may treat it as a motion to remand and may consolidate it with the pending appeal. *See* 8 C.F.R. § 1003.2(c)(4).

dural requirements,"[3] (2) "show that he was prejudiced by his representative's performance," and (3) show that the "proceeding was so fundamentally unfair" that he "was prevented from reasonably presenting his case." *Solis-Chavez v. Holder*, 662 F.3d 462, 466 (7th Cir. 2011). Habib contends that the Board abused its discretion when it rejected his argument that counsel acted ineffectively by incorrectly admitting that his marriage to Bualice was invalid. Habib maintains that—contrary to the Board's conclusion—he was prejudiced by counsel's admission because the validity of his marriage to Bualice "went to the heart of the government's case" and that counsel's mistaken admission that the marriage was invalid "essentially undercut any hope that Habib could reasonably present his case."

We agree with Habib that the Board abused its discretion in handling his ineffective assistance claim. Simply put, the Board demonstrated a misunderstanding of the law when it stated that Habib had not shown that "he was prejudiced by counsel's admission … that he was not validly married to a United States citizen when he adjusted his status." The government conceded at oral argument that "it was definitely … a mistake by former counsel to admit that allegation." That admission effectively waived Habib's defense to removal, and an attorney's waiver of a complete defense to removal prejudices the client and warrants remand so that the agency may determine "whether that concession rendered the administrative proceedings 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Solis-Chavez*, 662 F.3d at 469; *see Mai v. Gonzales*, 473 F.3d 162, 166–67 (5th Cir. 2006)

---

[3] The procedural requirements are set forth in *Matter of Lozada,* 19 I. & N. Dec. 637 (BIA 1988), and are not at issue here because the Board decided they were satisfied.

(concluding that alien's lawyer was ineffective where effect of lawyer's admitting charge denied by alien "was to cut off all available avenues of relief … without any apparent counteradvantage"). The government's proving under 8 U.S.C. § 1182(a)(6)(C)(i) that Habib had obtained adjustment of status by willfully misrepresenting a material fact created only a rebuttable presumption that he had gained residency because of the misrepresentation. *Kalejs v. I.N.S.*, 10 F.3d 441, 446 (7th Cir. 1993); *Emokah v. Mukasey*, 523 F.3d 110, 117 (2d Cir. 2008); *Monter v. Gonzales*, 430 F.3d 546, 557 (2d Cir. 2005). Habib could have rebutted this presumption by proving that he was eligible for adjustment of status despite the misrepresentation. *See Kalejs*, 10 F.3d at 446; *Emokah*, 523 F.3d at 117; *Monter*, 430 F.3d at 557. Doing so would have required him to prove that his marriage to Bualice was valid—a proposition directly at odds with counsel's admission that the marriage was invalid.

The Board seemed unaware that the government's establishing that Habib's misrepresentation was material created only a *presumption* of removability. The government makes the same mistake by contending in its brief that Habib was not prejudiced by counsel's mistaken admission because "it did not matter whether [Habib's] marriage to Bualice was valid." The government's argument is without merit: Once the government proved that Habib obtained residency by willfully misrepresenting a material fact, the *only* thing that mattered was whether his marriage to Bualice was valid. By proving that the marriage was valid, Habib would have shown that he was eligible for adjustment of status despite his misrepresentation and in doing so would have rebutted the government's case. The government contended at oral argument that Habib was not prejudiced because the IJ did not rely "heavily" on coun-

sel's mistaken admission in deciding that Habib was removable. The government's assertion that the IJ did not rely heavily on this admission does little to convince us that Habib was not prejudiced by counsel's mistake. The IJ's repeated references to the admission throughout her opinion cast doubt on the government's assertion and support the conclusion that counsel's misstep hurt Habib's case.

Habib next argues that the Board abused its discretion by deciding that counsel's failure to timely submit the divorce decree did not constitute ineffective assistance. Here too, we agree with Habib that the Board abused its discretion because the divorce decree was evidence crucial to proving that he was legitimately married to Bualice and thus eligible for adjustment of status regardless of his misrepresentations. Although the Board correctly observed that Habib's affidavit in support of his motion to reopen did not state when he gave the divorce decree to counsel, the Board did not mention the evidence—counsel's own inconsistent explanations at the removal hearing—*supporting* Habib's contention that counsel's deficient performance led to the untimely submission of this critical evidence. *See* 8 U.S.C. § 1229a(c)(7)(C) ("The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."); 8 C.F.R. § 1003.2(c)(1) (same). As pointed out by Habib in his brief to this court (and in the motion to reopen he submitted to the Board), counsel's statement to the IJ that he "just got" the divorce decree is belied by counsel's insistence at the same hearing that he thought he had already submitted the document as evidence. The Board did not mention this significant inconsistency in counsel's explanation, instead relying solely on the unbacked assertion in counsel's response—written in the third person and

signed only by the law firm—that counsel "did not receive the divorce decree timely to submit it with the other documents" (internal quotation marks omitted). The Board's failure to discuss evidence tending to show that the untimely filing was caused by counsel's deficient performance warrants remand because it calls into doubt whether the Board adequately considered this significant evidence. *See Chen v. Holder*, 782 F.3d 373, 377–78 (7th Cir. 2015) ("Where … the Board ignores a potentially meritorious argument when deciding a motion to reopen, it abuses its discretion. This principal applies to motions to reopen based on claims of ineffective assistance." (citations omitted)); *Boika v. Holder*, 727 F.3d 735, 741 (7th Cir. 2013); *Moosa v. Holder*, 644 F.3d 380, 386 (7th Cir. 2011).

Finally, Habib contends that the Board abused its discretion by concluding that he had not shown prejudice from counsel's neglecting to request an interpreter. We agree with the government that this argument fails because Habib does not "identify any specific instances of what testimony or unanswered questions prejudiced his case."

### III. CONCLUSION

Because the Board abused its discretion when denying Habib's motion to reopen, we GRANT the petition for review and REMAND to the agency for further proceedings.