In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1202

JOVO ASENTIC,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the Board of Immigration Appeals.
No. A078-775-182

ARGUED AUGUST 9, 2017 — DECIDED OCTOBER 17, 2017

Before MANION, KANNE, and SYKES, *Circuit Judges*.

MANION, *Circuit Judge*. Jovo Asentic, a Bosnian Serb who is now 65, was granted refugee status and brought his family to the United States from the former Yugoslavia more than fifteen years ago. He has been a permanent resident for nearly that long, but the Board of Immigration Appeals has authorized the government to remove Asentic from this country because, in applying for refugee status, he failed to disclose his

participation as a combatant in the Bosnian conflict during the 1990s. The Board could have granted Asentic a discretionary waiver of removal under 8 U.S.C. § 1227(a)(1)(H) but declined to do so. Asentic petitions for review. Although he presents a sympathetic case, we agree with the Board that he is removable based on fraud, and we lack jurisdiction to review the Board's discretionary decision to deny the waiver.

## I. Background

Asentic, his wife, and two adult children applied to come to the United States as refugees after the end of the Bosnian conflict. Asentic is Orthodox Christian, and his wife, Nadja, is Muslim. Asentic's refugee application was based on a fear of persecution because of this "mixed marriage." Refugees in Belgrade (where Asentic applied) were referred to staff from the International Organization for Migration ("IOM"), which had contracted with the State Department to screen applicants. IOM agents interviewed applicants in their native language and then completed an English-language refugee application. That form was passed to an adjudicating officer from U.S. Citizenship and Immigration Services, who placed the applicant under oath and, using an interpreter (typically another IOM case worker), reviewed the application with him. On Asentic's form in the section for "military service," the IOM agent listed Asentic's service from 1974 to 1975 in the Yugoslav army. The completed form does not mention Asentic's service, during the Bosnian conflict, in the Zvornik Infantry Brigade of the Army of Republika Srpska (the Bosnian Serb army, abbreviated "VRS"). An IOM agent had advised Asentic to "keep quiet about his service" or risk being rejected as a refugee. He was not alone in receiving this advice; an in-

ternal memorandum from U.S. Immigration and Customs En-
forcement concedes that many immigrants from the Bosnian
conflict "have been assisted in crafting this misrepresentation
by local national support personnel from the International Or-
ganization for Migration … in Belgrade." Asentic and his
family were accepted as refugees and moved to the United
States in 2000. He and his wife obtained green cards, and his
children eventually became naturalized U.S. citizens. On
Asentic's application to adjust his status, which he completed
to obtain his green card, he again omitted his service in the
VRS.

Asentic's omissions caught up with him years later when
officials at Immigrations and Customs Enforcement began
systematically checking VRS records against refugee applica-
tions. Michael MacQueen, a senior historian in the Human
Rights Law section of the Office of the Principal Legal Advi-
sor, was among those looking for ethnic Serbs in the United
States who had not disclosed their service during the Bosnian
conflict. *See, e.g.*, Pamela Constable, *Immigration Team Chases
Bosnian War Criminals 20 Years After Conflict's End*, Wash. Post
(Mar. 8, 2015). News media reported that MacQueen and his
team have investigated approximately 300 refugees from Bos-
nia. *See, e.g.*, Eleanor Rose, *America's Hidden Bosnian War Crim-
inals Face Determined Foe*, Balkan Transitional Justice (Feb. 13,
2017). Some of those refugees served in the VRS but were not
involved in its atrocities. *See* Constable, *Immigration Team*; Eric
Lichtblau, *U.S. Seeks to Deport Bosnians over War Crimes*, N.Y.
Times (Feb. 28, 2015), https:// www.nytimes.com /2015 /03 /01
/world/us-seeks-to-deport-bosnians-over-war-crimes.html.

MacQueen interviewed Asentic under oath in 2006. When
asked if he had served in the VRS between 1992 and 1996,

Asentic acknowledged that he had been part of the Zvornik Infantry Brigade. Two years later, Immigration and Customs Enforcement issued a Notice to Appear charging Asentic as removable on the ground that he purposely failed to disclose his VRS service in both his refugee application and his later application to adjust status.[1] Asentic declined to concede removability.

Prolonged immigration proceedings followed. After hearing testimony from two government witnesses (MacQueen and Todd Gardner, Special Assistant to the Director of the Refugee Affairs Division in U.S. Citizenship and Immigration Services), an immigration judge concluded that Asentic is removable under 8 U.S.C. § 1227(a)(1)(A) because he willfully omitted material information—his VRS involvement—from his immigration forms. Gardner specifically insisted that Asentic's omission of his VRS service from his refugee application was material because, if he had told the truth, further inquiry would have been conducted. But the immigration judge said little about the materiality of Asentic's omissions, noting only that candor about VRS involvement had been "critical, especially during the Bosnian conflict, for the U.S. Government to further inquire as to his participation in the Bosnian conflict during that period of time." (The immigration judge revisited her ruling in a later written decision but again said nothing about materiality.)

---

[1] The Notice to Appear also charged that Asentic had been convicted under 18 U.S.C. § 1546 of falsifying his refugee application, but that inaccurate charge was dropped. Asentic had been indicted under § 1546, but the government dismissed the criminal case with prejudice. *United States v. Asentic*, 1:07-cr-00471-1 (N.D. Ill. Aug. 4, 2008).

Asentic responded to this ruling by applying for a waiver of removability under 8 U.S.C. § 1227(a)(1)(H), which allows an immigration judge to overlook fraud if the applicant has significant family ties in the United States and the immigration judge decides that a waiver is merited. Both Asentic and MacQueen then testified about Asentic's service in the VRS, in particular at the time of the Srebrenica massacre.

Asentic testified first. He explained that, initially, he left his predominately Muslim village and fled to Serbia with his family to escape conscription in the Muslim territorial defense force. But VRS sympathizers in Serbia forced him back to Bosnia and into the ranks of the VRS. He was assigned to what eventually became the 7th Battalion of the Zvornik Brigade and was tasked with guarding the de facto border between Serbian and Bosnian areas. During his years of service, he was promoted, both officially and unofficially, by the commander of his battalion. According to Asentic, the commander, an old business acquaintance, was trying to protect him, since his mixed marriage was a source of suspicion. By the time of the Srebrenica massacre in July 1995, Asentic had been given the rank of assistant commander of the company (which had about 90 soldiers). He did not have authority over other soldiers, however, and was limited to helping company members resolve personal issues. Regarding Srebrenica, Asentic said his battalion was stationed about 100 miles away and did not participate in the massacre. He was on the border until the end of the armed conflict in Bosnia, signaled by the signing of the Dayton Accords in 1995, *see 767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia,* 218 F.3d 152, 156 (2d Cir. 2000), after which he was made commander of an aerial defense unit that never was operational. His service ended in March 1996.

MacQueen acknowledged that Asentic's specific role at
Srebrenica is not documented in VRS records, which show
only that he was on duty continuously during the time of the
massacre. MacQueen thought it unlikely that Asentic had par-
ticipated in executions, but he speculated that the petitioner
had seen some combat and probably helped catch stragglers
after the massacre. MacQueen conceded, though, that no of-
ficer from any battalion of the Zvornik Brigade has been pros-
ecuted in the International Criminal Tribunal for the former
Yugoslavia and that the 7th Battalion hasn't even been men-
tioned in any judgment from that court. Nor has any member
of the 7th Battalion been prosecuted by the War Crimes
Chamber in Bosnia and Herzegovina. Asentic's name has not
surfaced in any accusation of war crimes or other criminal ac-
tivity.

Asentic and his family also testified that his removal
would be especially burdensome for the family because of his
wife's health issues, her inability to work or drive, and her
general dependence on Asentic. They discussed the difficul-
ties Asentic would experience living in Bosnia given his
mixed marriage, his age, his lack of connections, and the scar-
city of jobs. Asentic also noted his "good behavior" in the
United States—he has been employed consistently, has paid
taxes every year, and has never been charged with a crime
(here or in the former Yugoslavia).

The immigration judge concluded that Asentic is statuto-
rily eligible for the fraud waiver but, as a matter of discretion,
also concluded that he is undeserving. The immigration judge
credited Asentic's testimony and found by a preponderance
of evidence that he did not participate in the genocide, mean-
ing he is not statutorily barred from receiving a waiver as he

would be if he participated in genocide or extrajudicial killings. *See* 8 U.S.C. § 1227(a)(4)(D). And the immigration judge looked favorably on Asentic's lengthy residence in the United States, his lack of criminal history, his steady employment, his consistent payment of taxes, his significant family responsibilities, and the burden his family would bear if he is removed. But against all of this the immigration judge deemed the nature of Asentic's misrepresentation on his refugee and adjust of status applications "particularly serious"—the first because it was done deliberately out of fear that telling the truth would prevent him from being admitted as a refugee, and the second because the omission was in the context of his extensive military service at a time when the VRS committed atrocities.

The Board of Immigration Appeals upheld the immigration judge's findings on removability and on Asentic's application for a waiver. After reassessing the evidence, the Board likewise concluded that Asentic is subject to removal because he willfully failed to disclose his VRS service when he applied for refugee status. (The Board did not discuss Asentic's omission on his application for a green card.) That omission was material, the Board reasoned, because a truthful answer could have prompted more questions about Srebrenica and, possibly, a finding of inadmissibility. The Board reweighed those factors the immigration judge had considered in declining to grant a waiver, and again the Board agreed with the immigration judge's analysis. The Board added that Asentic's promotions and continued service after the war suggested "compliance at a time when war crimes were being committed."

## II. Discussion

When the Board of Immigration Appeals adopts but also supplements an immigration judge's analysis, we review both decisions to the extent we have jurisdiction. *Delgado-Arteago v. Sessions*, 856 F.3d 1109, 1114 (7th Cir. 2017). In contrast, when the Board has issued a stand-alone decision, even if that decision endorses the immigration judge's reasoning, we review only the Board's decision. *See Yuan v. Lynch*, 827 F.3d 648, 653 (7th Cir. 2016); *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). In this case the Board analyzed the issues presented by Asentic's appeal without adopting the immigration judge's decision, so we review only the Board's decision.

### A. Finding of Removability

Asentic first argues that the Board wrongly concluded that he is subject to removal under 8 U.S.C. § 1227(a)(1)(A). That provision authorizes removal if the alien was inadmissible when he entered the United States. The Board, like the immigration judge, reasoned that Asentic was inadmissible when he arrived in the United States because he had willfully failed to disclose his VRS service, a material fact, and thus obtained an immigration benefit through fraud. *See* 8 U.S.C. § 1182(a)(6)(C)(i); *Kalejs v. I.N.S.*, 10 F.3d 441, 446 (7th Cir. 1993). Asentic contends that omitting mention of his VRS service could not have been willful because the IOM agent *told* him to say nothing about that service. Moreover, he insists, the omission was not material because every IOM agent in Belgrade knew that all adult males in Bosnia had been conscripted.

When the government relies on § 1182(a)(6)(C)(i) in asserting fraud as a basis for inadmissibility, it must establish four

elements by clear and convincing evidence: (1) the alien misrepresented a fact, (2) he did so willfully, (3) the misrepresentation was material, and (4) the alien procured an immigration benefit as a result. *Atunnise v. Mukasey*, 523 F.3d 830, 835 (7th Cir. 2008); *Kalejs,* 10 F.3d at 446. The Board analyzed these elements and concluded that Asentic had engaged in fraud, and that conclusion is supported by substantial evidence.

### 1. Existence of a Misrepresentation

Asentic argues that he did not misrepresent "any aspect of his military participation" because, when he applied for asylum, he disclosed what the IOM representative advised him to disclose. But the form itself is what the agent from U.S. Citizenship and Immigration Services evaluated and is the document that Asentic swore to be true. And that form states only that Asentic had fled Bosnia in 1992 and nothing more. Giving incomplete information that obfuscates possible involvement in atrocities constitutes a misrepresentation. *See Kalejs,* 10 F.3d at 445. Thus Asentic's contention that he did not make a misrepresentation is unpersuasive.

### 2. Willfulness of the Misrepresentation

Under § 1182(a)(6)(C)(i), willfulness is evaluated from the subjective perspective of the person who made the misrepresentation. *See Garcia v. I.N.S.*, 31 F.3d 441, 443 (7th Cir. 1994). A misrepresentation is willful if made deliberately and voluntarily. *E.g., Wen Zhong Li v. Lynch*, 837 F.3d 127, 131 (1st Cir. 2016). Proof that an alien knew his representation to be false suffices to establish willfulness. *See Mwongera*, 187 F.3d at 330; *Parlak*, 578 F.3d at 464; *Witter v. I.N.S.*, 113 F.3d 549, 554 (5th Cir. 1997).

Asentic's misrepresentation was willful because he deliberately and voluntarily omitted his VRS service. When MacQueen interviewed him in 2006, Asentic admitted knowing it was unlawful to omit information from his refugee application. He also conceded that the omission was motivated by fear that candor would harm his chances of gaining refugee status. These admissions establish that Asentic knew his incomplete answer about military service was false and that he deliberately advanced that falsehood. And though Asentic argues that the IOM agent "induced" his incomplete answer, he has never asserted that the omission from his refugee application was involuntary. Faulting Asentic for taking advice from someone coordinating directly with the U.S. immigration officers might seem harsh—particularly given that the former head of the IOM mission in Belgrade acknowledged that many refugees thought the IOM was a U.S. government agency. One can imagine a Bosnian refugee thinking the IOM agent and the adjudicator from U.S. Citizenship and Immigration Services were coworkers and thus, if the refugee was in doubt about the need for disclosure, the IOM agent could be trusted to know what information was required. But that's a hypothetical for another day; as we have said, Asentic confessed to knowing that disclosing his VRS service was required, despite the IOM agent's tip that silence would help assure a favorable determination. Thus, the IOM agent's advice does not change the voluntary and deliberate nature of his act.

### 3. Materiality of the Misrepresentation

A misrepresentation "is material if it had a natural tendency to influence" immigration officials. *Kalejs*, 10 F.3d at 446. Asentic argues that "mandatory service was common

knowledge among all IOM representatives" and so his omission could not "possibly cut off a line of inquiry as to service which IOM representatives not only knew" about "but in fact induced him to omit." Asentic also contends that the IOM agent could have questioned him further about his VRS service, even though it was omitted from his refugee application, because the agent knew about that service.

We do not understand Asentic's point. Asentic did not deceive the IOM agent; he told *her* about his VRS service. Instead, the person deceived by his incomplete refugee application was the decision-maker from U.S. Customs and Immigration Service.

The purpose of the materiality requirement is "to exclude trivial or irrelevant misstatements," and thus the government need not show that the alien would have been excluded based on a truthful statement. *United States v. Latchin*, 554 F.3d 709, 713 (7th Cir. 2009); *Kalejs* 10 F.3d at 446. But if, for example, a truthful statement would have resulted in further investigation by an immigration official, then the misrepresentation is certainly material. *See Latchin*, 554 F.3d at 714. Asentic essentially admitted that his omission was material given that he testified that he purposely left his VRS service off his immigration forms because he feared that full disclosure could result in further questioning and unfavorable decisions. *See Matter of D-R-*, 25 I. & N. Dec. 445, 450 (BIA 2011) (Board concluded that government had established materiality of Bosnian refugee's nondisclosure of service with special police force, since expert testified that disclosure would have prompted additional questioning about asylum application).

### 4. *Procurement of an immigration benefit*

Proof of a material misrepresentation raises a rebuttable presumption that the alien benefited from the misrepresentation. *Habib v. Lynch*, 787 F.3d 826, 831–32 (7th Cir. 2015); *Kalejs*, 10 F.3d at 446. The alien may rebut this presumption through a preponderance of evidence establishing that complete and truthful disclosure would not have defeated his application for an immigrant benefit. *Habib* 787 F.3d at 831–32; *Kalejs*, 10 F.3d at 446. Before the Board, however, Asentic never tried to rebut the presumption that concealing his VRS service helped him gain refugee status and a green card. It is too late to make that argument now, *see Awe v. Ashcroft*, 324 F.3d 509, 512–13 (7th Cir. 2003) (arguments not timely raised are waived), and so the government also has satisfied this final element.

## B. Waiver of Removal

Asentic next argues that the Board incorrectly weighed the evidence in concluding that he did not merit a waiver of removability under 8 U.S.C. § 1227(a)(1)(H). To obtain this waiver, an alien who is statutorily eligible must, in the eyes of the immigration judge or Board, merit a favorable act of discretion. *Singh v. Gonzales*, 451 F.3d 400, 410 (6th Cir. 2006). Asentic's statutory eligibility is undisputed. Nevertheless, although previously we had not considered our authority to review the denial of a § 1227(a)(1)(H) waiver, we now join the circuits which have considered this question and conclude that we lack jurisdiction to do so. *See Mutie-Timothy v. Lynch*, 811 F.3d 1044, 1049 (8th Cir. 2016); *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549 (11th Cir. 2011); *Ahmed v. Holder*, 624 F.3d 150, 153–54 (2d Cir. 2010); *Zajanckauskas v. Holder*, 611 F.3d 87,

89–90 (1st Cir. 2010); *Singh*, 451 F.3d at 411; *San Pedro v. Ashcroft*, 395 F.3d 1156, 1157–58 (9th Cir. 2005).

### III. Conclusion

Because we do not have jurisdiction to review the Board's denial of Asentic's application for a waiver of removal under 8 U.S.C. § 1127(a)(1)(H), we DISMISS that portion of his petition for review. The remainder of the petition is DENIED.