# UNPUBLISHED

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 16-2309

NEFTALI MALDONADO-GUZMAN,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  October 16, 2017

Decided:  December 28, 2017

Before TRAXLER and AGEE, Circuit Judges, and Loretta C. BIGGS, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

Jaime Winthuysen Aparisi, Silver Spring, Maryland, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Russell J.E. Verby, Senior Litigation Counsel, Nancy K. Canter, Trial Attorney, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Neftali Maldonado-Guzman petitions for review of the Board of Immigration Appeals' ("the Board") dismissal of his appeal from an immigration judge's ("IJ") order pretermitting his application for cancellation of removal, denying his request for a continuance, and granting voluntary departure. His sole challenge is to the Board's denial of his request for a continuance. For the following reasons, we deny the petition for review.

## I.

Maldonado-Guzman, a native and citizen of Mexico, unlawfully entered the United States in 1998. Apart from two brief return visits to Mexico, he has resided without authorization in the United States since that time.

In 2014, the Department of Homeland Security ("DHS") served Maldonado-Guzman with a Notice to Appear for removal proceedings and charged him as removable for presence in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i). At a hearing on the Notice to Appear in February 2015, Maldonado-Guzman admitted removability and obtained a continuance until January 2016 based on his intent to apply for cancellation of removal and for a U nonimmigrant visa ("U visa").[1]

---

[1] Congress designed the U visa to help protect victims of "domestic violence, sexual assault, trafficking of aliens, and other crimes" and to aid in the prosecution of these offenses. Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, § 1513(a)(2), 114 Stat. 1464, 1533; *see* 8 U.S.C. § 1101(a)(15)(U) (codifying Victims of Trafficking and Violence Protection Act of 2000). U visa eligibility requires a

One month before the January 2016 hearing, Maldonado-Guzman filed a motion for a continuance so that he could prepare a U visa application. Along with the motion, Maldonado-Guzman provided a recently-obtained copy of a certified I-918 Supplement B, which stated that he had been injured during an assault in 1999. The document stated that Maldonado-Guzman was helpful throughout the investigation and prosecution of his assailants, and that his cooperation was no longer necessary. The record contains no opposition from the DHS nor ruling by the IJ in response to the motion.

At the January 2016 hearing, Maldonado-Guzman conceded that he was ineligible for cancellation of removal, despite his previously expressed desire to pursue it. He renewed his motion for a continuance to have additional time to apply for a U visa, which he still had not done.

---

determination by the Secretary of the DHS that "the alien has suffered substantial physical or mental abuse as a result of having been a victim of [covered] criminal activity." 8 U.S.C. § 1101(a)(15)(U)(i)(I).

An alien can apply for a U visa by filing a Petition for U Nonimmigrant Status, a biometric fee, and initial evidence with the United States Citizenship and Immigration Services division of the DHS ("USCIS"), which has exclusive jurisdiction over the U visa application. 8 C.F.R. § 214.14(c). Part of the initial evidence is a Form I-918, Supplement B signed by an appropriate official, which certifies that:

> the applicant has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; the petitioner has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity; and the qualifying criminal activity violated U.S. law, or occurred in the United States, its territories, its possessions, Indian country, or at military installations abroad.

§ 214.14(c)(2)(i).

In an oral ruling, the IJ denied the request for a continuance, finding no good cause to continue the proceedings. At the outset, the IJ recognized Maldonado-Guzman's pattern of dilatory tactics, as evidenced by the fact that Maldonado-Guzman had from September 2014 to January 2016 to present the IJ with a filed U visa application, yet had not taken the opportunity to pursue relief and instead had only provided the IJ with a "bare bone" draft application that he intended to file at some unknown point. Further, the IJ reasoned that the outcome of the removal proceedings would not affect Maldonado-Guzman's U visa application, should one be filed, because U visas fall under the sole jurisdiction of USCIS, and the court had no jurisdiction over the U visa application. Consequently, the IJ pretermitted Maldonado-Guzman's application for cancellation of removal, denied his request for a continuance, and granted his request for voluntary departure. Maldonado-Guzman timely appealed to the Board.

Maldonado-Guzman's appeal was dismissed by the Board in an opinion that noted the factors relevant to the continuance analysis identified in *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807, 812–13 (BIA 2012). Although the Board recognized that the pertinent regulations permit a continuance when a respondent will likely obtain a U visa, the Board agreed with the IJ that a continuance was not warranted because Maldonado-Guzman could have sought a U visa since 1999, and he could still apply for one following a final order of removal. The Board expressly based its decision on these "procedural factors alone." A.R. 4. In dicta, the Board incorrectly noted that the DHS had opposed the motion for a continuance, citing the representation to that effect made by Maldonado-

4

Guzman in his brief to the Board. After dismissing Maldonado-Guzman's appeal, the Board allowed him to depart the United States voluntarily under the IJ's order.

Maldonado-Guzman then filed his petition for review in this Court. We have jurisdiction pursuant to 8 U.S.C. § 1252. *See Lendo v. Gonzalez*, 493 F.3d 439, 441 n.1 (4th Cir. 2007) (agreeing with the majority of circuits that § 1252(a)(2)(B)(ii) does not bar this Court's jurisdiction to review an IJ's denial of a continuance).

II.

We review the Board's decision to uphold an IJ's denial of a continuance "for abuse of discretion only." *Onyeme v. INS*, 146 F.3d 227, 231 (4th Cir. 1998). We must uphold the Board's discretionary decision "unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, *e.g.,* invidious discrimination against a particular race or group." *Id.* (internal quotation marks omitted). The Board's explanation of its decision "need only be reasoned, not convincing." *Lawrence v. Lynch*, 826 F.3d 198, 203 (4th Cir. 2016) (internal quotation marks omitted). We review due process claims *de novo*. *See Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004).

Moreover, where, as here, the Board issues a standalone opinion without adopting the IJ's opinion, we review solely the Board's decision and do not separately consider the IJ's ruling. *Martinez v. Holder*, 740 F.3d 902, 908 & n.1 (4th Cir. 2014); *see* 8 U.S.C. § 1252(a)(1); 28 U.S.C. § 2344; *Asentic v. Sessions*, 873 F.3d 974, 980 (7th Cir. 2017)

("[W]hen the Board has issued a stand-alone decision, even if that decision endorses the immigration judge's reasoning, we review only the Board's decision.").[2]

## III.

Maldonado-Guzman raises two issues: (A) whether the Board abused its discretion when it dismissed his appeal, and (B) whether that dismissal violated the Due Process Clause.

### A.

Maldonado-Guzman first contends the Board abused its discretion in dismissing his appeal because its analysis did not adhere to the criteria set out in its prior precedent regarding the consideration of a motion for a continuance. We disagree. The Board did not abuse its discretion when it dismissed Maldonado-Guzman's appeal because it did not inexplicably depart from its own established policies and its decision has a rational explanation. *See Onyeme*, 146 F.3d at 231.

---

[2] Large portions of Maldonado-Guzman's argument focus on the IJ's decisions. However, the Board issued its own opinion on the denial of the continuance, and it is the only opinion we review. *See Martinez v. Holder*, 740 F.3d 902, 908 & n.1 (4th Cir. 2014). Because the final order of removal is the BIA's own independent decision, any error the IJ made is harmless and is not grounds for granting Maldonado-Guzman's petition. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (noting that harmless error doctrine applies to immigration cases and does not require reversal where the errors have no effect on the substantive outcome or procedural fairness); *De Zavala v. Ashcroft*, 385 F.3d 879, 883 n.8 (5th Cir. 2004) (noting the court's inability to review the IJ's decision that did not impact the Board's final decision).

1.

The Board established its policy for evaluating motions for a continuance in the precedential decision of *Matter of Sanchez Sosa*, which applied its earlier precedential decision of *Matter of Hashmi*, 24 I. & N. Dec. 785 (BIA 2009), to cases involving U visa applications. *See* 25 I. & N. Dec. at 812–13. In *Hashmi*, the Board discussed what factors IJs should consider when deciding whether to grant a continuance where the adjudication of a visa petition could affect a later application for adjustment of status. *See* 24 I. & N. Dec. at 790. In that case, the alien was granted a number of continuances while he awaited adjudication of a Petition for Alien Relative ("I-130"), which, if granted, would make him eligible for an adjustment of status. *See id.* at 787. After an appeal from the denial of the fifth continuance in that case and on remand from the Third Circuit, the Board set forth a non-exhaustive list of factors that IJs "may . . . consider[]" when determining whether good cause exists to continue removal proceedings. *Id.* at 790. The factors include:

> (1) the DHS response to the motion; (2) whether the underlying visa petition is prima facie approvable; (3) the respondent's statutory eligibility for adjustment of status; (4) whether the respondent's application for adjustment merits a favorable exercise of discretion; and (5) the reason for the continuance and other procedural factors.

*Id.* The Board described these factors as "illustrative, not exhaustive," with the focus being the "ultimate likelihood of success on the adjustment application." *Id.* After discussing the factors, the Board remanded the case to the IJ to "articulate, balance, and explain all these relevant factors, and any others that may be applicable." *Id.* at 794.

7

*Sanchez Sosa* examined the factors IJs should consider when specifically determining whether to grant a continuance in light of a pending U visa application. *See* 25 I. & N. Dec. at 807. The Board observed that some of the *Hashmi* factors specifically "relate to the U visa, in particular: (1) the DHS's response to the motion; (2) whether the underlying visa petition is prima facie approvable; and (3) the reason for the continuance and other procedural factors." *Id.* at 812–13. The Board once again outlined a multi-factor analytical "framework," rather than a rigid test, to address the undefined regulatory term "good cause." *Id.* at 812. Like the *Hashmi* factors, the *Sanchez Sosa* factors "are not exhaustive, and the [IJ] may consider other relevant considerations in determining whether good cause has been shown for a continuance." *Id.* at 815. The Board emphasized that IJs should examine "*all*" factors relevant to the viability of the U visa application, adding that "there is a rebuttable presumption that an alien who has filed a prima facie approvable application with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time." *Id.* at 815 (emphasis added). The Board then remanded the case to the IJ to give the respondents the opportunity to present proof that they filed a U visa application that "meet[s] the criteria established in this decision." *Id.* at 816.

2.

The Board did not inexplicably depart from its prior decisions. At the outset of our analysis, we note that it is questionable whether *Sanchez Sosa* applies in this case, as Maldonado-Guzman had not filed a U visa petition when he requested a continuance. In *Sanchez Sosa*, the Board described its precedent leading up to that decision as "set[ting]

8

forth a framework to analyze whether good cause exists to continue proceedings to await adjudication by the USCIS of a *pending* family-based visa petition." *Id.* at 812 (emphasis added) (internal quotation marks omitted). A relevant factor in the Board's analysis was the existence of "the underlying visa petition," *id.*, a factor obviously not present here. Further, the Board in *Sanchez Sosa* stated that to aid an IJ's evaluation of a U visa application's approvability, a respondent "should also provide a receipt indicating that the petition has been submitted to the USCIS," *id.* at 814, and "provide copies of and proof regarding the *filing of their application* with the USCIS and *to otherwise meet the criteria* established in this decision for the [IJ]'s consideration of their request for a continuance." *Id.* at 816 (emphases added). A respondent cannot provide this information to support the approvability of a U visa application when no application has been filed.

Nonetheless, we need not decide whether *Sanchez Sosa* only applies when there is a pending U visa application because, even applying the *Sanchez Sosa* factors, the Board's opinion follows that analysis and presents a rational explanation for its decision. The Board expressly based its decision solely on *Sanchez Sosa*'s procedural factors, A.R. 4, and the Board's analysis of these factors reasonably explains why Maldonado-Guzman failed to establish "good cause" for a continuance. *See Sanchez Sosa*, 25 I. & N. Dec. at 814–15. Contrary to Maldonado-Guzman's contention, the Board was not required to decide his appeal by considering the likelihood he would be granted a U visa.

Applied to Maldonado-Guzman's appeal, *Sanchez Sosa* permits the Board to deny a continuance solely because of the relevant "procedural factors." *Id.* at 815. The Board in that case noted that prior continuances, the length of time that an application has been

pending, and any other related factor may support a decision to deny a continuance, *even where* the respondent has filed a prima facie approvable U visa application. *See id.* at 814–15. Although "the focus [of the *Sanchez Sosa* analysis] . . . is the likelihood" that a U visa will be granted, *id.* at 813 (internal quotation marks omitted), the case recognizes that the merits of a U visa application may be immaterial in light of these other considerations. *See id.* at 814–15. *Sanchez Sosa* does not require consideration of a U visa application's merits (or any other single factor) in every case, so long as the Board provides a rational explanation for its decision. *See, e.g.*, *Duruji v. Lynch*, 630 F. App'x 589, 593 (6th Cir. 2015) ("[W]e have never suggested that the Board abuses its discretion when it refrains from expounding upon each suggested factor—especially when its decision can otherwise be rationally explained.").

In this case, the Board primarily relied upon two procedural factors: the amount of time Maldonado-Guzman took to raise the prospect of filing a U visa application after the event underlying his claim of eligibility, and the fact that he could seek the U visa after a final order of removal and apply to USCIS for a stay of removal while the U visa application is pending. These considerations fully comport with the valid procedural considerations described in *Sanchez Sosa*.

First, the Board noted that Maldonado-Guzman had since 1999 to seek a U visa, yet he did not pursue relief until almost fifteen years later—after being notified that removal proceedings had been initiated against him. The lengthy time period that ran before Maldonado-Guzman began to seek a U visa bears on whether his case merited a second continuance simply to apply for and await adjudication of a U visa application

10

that he could have filed years earlier. This consideration comports with *Sanchez Sosa*, which discussed both "the length of time the application has been pending" and "additional relevant considerations" as potentially determinative of a motion for a continuance. 25 I. & N. Dec. at 815. Similar to the length of a U visa application's pendency, the length of time it took to pursue the application in the first instance is relevant to the Board's "decision to move forward with the case." *Id.* at 814 (internal quotation marks omitted).

Second, the Board explained that Maldonado-Guzman could seek a stay of removal from the DHS while the U visa application was pending. The Board also expressly recognized this procedural option in *Sanchez Sosa*. *See id.* at 815 n.10 ("Aliens subject to an order of removal may seek a stay from the USCIS to await the adjudication of a U visa." (citing 8 U.S.C. § 1227(d)(2006); 8 C.F.R. § 214.14(c)(1)(ii)).

In all, these procedural factors mirror those discussed in *Sanchez Sosa*, and, taken together, they support the Board's decision to move forward with Maldonado-Guzman's case. Where, as here, the Board makes clear that the "procedural factors alone" justified its decision, and it provides a rational explanation of those factors, the Board has effectively stated that the other factors would not outweigh these procedural considerations so as to change the outcome. Therefore, because the Board did not inexplicably depart from its established policy and provided a rational explanation for its actions, it did not abuse its discretion.

11

3.

The additional challenges Maldonado-Guzman raises to the Board's order are meritless. Maldonado-Guzman asserts that the Board erred by incorrectly stating that the DHS opposed his renewed motion to continue. While, in fact, there is no opposition filed by the DHS in the record, the source of this erroneous statement was Maldonado-Guzman's own brief to the Board. Maldonado-Guzman admits that his brief misstated this fact.

Under the invited error doctrine, it is well established that "[a] party cannot successfully complain of error for which he, himself, is responsible . . . ." *Cranston Print Works Co. v. Pub. Serv. Co. of. N.C.*, 291 F.2d 638, 649 (4th Cir. 1961). Maldonado-Guzman can receive no relief for a factual discrepancy he created. Moreover, the Board mentioned this point only as an additional basis for its decision after concluding the procedural grounds discussed above were sufficient on their own. As such, any factual error was harmless. *See Ngarurih*, 371 F.3d at 190 n.8.

Maldonado-Guzman's argument also fails because it is premised on a faulty understanding of the law. He contends that the IJ should have granted the continuance because the DHS did not express opposition to his motion pursuant to *Hashmi*. Although we are not directly reviewing the IJ's decision in this case, we observe that this argument is wrong under Board precedent. Far from mandating a continuance where the DHS is silent, as Maldonado-Guzman contends, *Hashmi* merely states that the IJ "ordinarily" should grant the continuance when "the DHS *affirmatively* expresses a lack of opposition . . . ." 24 I. & N. Dec. at 791 (emphasis added). As mere silence does not

constitute an affirmative expression of lack of opposition, Maldonado-Guzman's assertion that the DHS's lack of response mandates a continuance under *Hashmi* fails. Lastly, the Board recognized in *Hashmi* that "unusual, clearly identified, and supported reasons" could justify not granting a continuance, even in light of the DHS's non-opposition. *Id.* This too negates Maldonado-Guzman's argument.

B.

We also reject Maldonado-Guzman's argument that denial of the second continuance violated the Due Process Clause by depriving him of a meaningful opportunity to be heard on his U visa application. To the contrary, the Board did not violate the Due Process Clause when it dismissed Maldonado-Guzman's appeal because the denial of a continuance does not affect Maldonado-Guzman's interest in filing or pursuing the U visa application.

When evaluating due process claims, we consider (1) whether there is a property or liberty interest at stake, and (2) whether a process unconstitutionally deprived someone of that interest. *See Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993). A party who is unable to identify a property or liberty interest cannot successfully assert a due process claim. *See Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002). The mere expectation of a statutory benefit is not enough, but a statute that grants an entitlement and "meaningfully" limits the discretion of those who provide the entitlement triggers constitutional protections. *See id.* at 429–30 (internal quotation marks omitted). Statutes that only provide discretionary relief, therefore, do not create a property or liberty interest subject to the Due Process Clause. *See id.* at 430.

13

U visas are a discretionary form of relief. *See Torres-Tristan v. Holder*, 656 F.3d 653, 656 n.3 (7th Cir. 2011) ("A person who meets the statutory criteria is only eligible for . . . a [U] visa, not entitled to one as a matter of right."); *Wright v. INS*, 379 F.2d 275 (6th Cir. 1967) ("An alien does not obtain a vested right upon approval of a visa petition."). Thus, Maldonado-Guzman's U visa application does not create a liberty or property interest protected by the Due Process Clause.

Furthermore, Maldonado-Guzman's right to be heard is in no way prejudiced by the denial of a continuance. Even if he is subject to a final order of removal, he "is not precluded from filing a petition for U–1 nonimmigrant status directly with USCIS." 8 C.F.R. § 214.14(c)(1)(ii). If USCIS later grants Maldonado-Guzman's U visa, he may file to reopen and terminate the removal proceedings against him. § 214.14(c)(5)(i). Most significantly, Maldonado-Guzman can seek an administrative stay of removal despite being subject to a final order of removal. § 214.14(c)(1)(ii). Given that Maldonado-Guzman's right to be heard was not prejudiced by the denial of a continuance on removal proceedings, he has failed to establish a violation of the Due Process Clause.

IV.

For these reasons, we deny Maldonado-Guzman's petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*PETITION DENIED*

14